(December 31, 1909.)

## STATE, Respondent, v. JAMES McGREEVEY, Appellant.

[105 Pac. 1047.]

CRIMINAL LAW—PRELIMINARY EXAMINATION—COMMITMENT BY MAGIS-
TRATE — INFORMATION BY PROSECUTOR — SELF-DEFENSE — INSTRUC-
TIONS.

1. Under the provisions of sec. 8, art. 1 of the state constitution,
authorizing prosecutions "on information of the public prosecutor
after a commitment by a magistrate," *held*, that the prosecutor
has no power or authority to file an information against an
accused person until after such person has been committed by a
magistrate, and that he can file his information for the offense
only for which the accused was committed by the magistrate.

2. It was intended by the framers of the constitution in adopt-
ing sec. 8, art. 1 of the constitution to accord every accused
person an opportunity for a hearing before a magistrate on the
offense charged against him as a condition precedent to the filing
of an information by the public prosecutor charging the accused
with the commission of such offense.

3. Under the provisions of sec. 7662, Rev. Codes, enacted by
the legislature in furtherance of and to carry out the provisions
of sec. 8, art. 1 of the constitution, "No information shall be filed
against any person for any offense until such person shall have
had a preliminary examination therefor, as provided by
law. . . . . "

4. The following instruction does not correctly state the law
of self-defense, and it is *held* to be erroneous:

"The court instructs the jury that before a party can justify
the taking of life in self-defense he must show that there was
reasonable ground for believing that he was in great peril, and
that the killing was necessary for his escape and that no other
safe means was open to him. When one believes himself about
to be attacked by another and to receive great bodily injury, it
is his duty to avoid the attack if he can safely do so; and the
right of self-defense does not arise until he has done everything
in his power to avoid this necessity."

5. The law of self-defense discussed and considered.

6. Evidence of the previous good character of an accused person
is admissible in cases of homicide where the plea is self-defense,
for the purpose of showing that the defendant when he committed
the fatal act did so under an honest and conscientious belief that

it was necessary for the protection of his person, and to likewise show that he acted with good motives and without malicious, wrongful or criminal intent, and such evidence should go to the jury to be considered by them the same as any other evidence in the case.

7. In proving threats made by an accused person prior to the commission of the offense charged, it is necessary to in some manner show that the threats made were meant for and had reference to the person subsequently killed or injured by the accused.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for the County of Canyon. Hon. Ed L. Bryan, Judge.

Prosecution for murder; conviction of manslaughter. Defendant appealed. Judgment *reversed.*

Rice, Thompson & Buckner, and W. A. Stone, for Appellant.

The prosecuting attorney is limited in his powers to charging the offense upon which the defendant has been committed. (*Charge to Grand Jury,* 2 Saw. 667, 30 Fed. Cas. No. 18,255; *In re Bain,* 121 U. S. 1, 7 Sup. Ct. 781, 30 L. ed. 849; 20 Cyc. 1294, and cases cited; *Hurtado v. California,* 110 U. S. 516, 4 Sup. Ct. 111, 28 L. ed. 232.)

The supreme court of California, with constitutional and statutory provisions quite similar to our own, has taken this view in the case of *People v. Nogiri,* 142 Cal. 596, 76 Pac. 490.

The prosecuting attorney can proceed by information only upon the offense designated by the magistrate who holds the examination. (*State v. Boulter,* 5 Wyo. 236, 39 Pac. 883; *Yaner v. People,* 34 Mich. 286; *People v. Bechtel,* 80 Mich. 623, 45 N. W. 582; *People v. Pichette,* 111 Mich. 461, 69 N. W. 739.)

Where the right to file an information by the prosecuting attorney is based upon statutes or constitutions like our own, they are uniform in requiring the prosecuting attorney to file an information for the same offense as that named by the

committing magistrate or for an offense of a lesser grade than that named, and in no instance do they permit the prosecuting attorney to file an information charging a different offense or a higher grade of offense than that named by the committing magistrate. (*People v. Jones,* 24 Mich. 215; *People v. Sessions,* 58 Mich. 594, 26 N. W. 291; *People v. Handley,* 93 Mich. 46, 52 N. W. 1032; *Kennegar v. State,* 120 Ind. 176, 21 N. E. 917; *Alderman v. State,* 24 Neb. 97, 38 N. W. 36; *City of Galt v. Elder,* 47 Mo. App. 164; *Mills v. State,* 53 Neb. 263, 73 N. W. 761; *Hanson v. State* (Tex. Cr. App.), 61 S. W. 120.)

The fact that the court gave a correct instruction upon the particular phase of the right of self-defense in instruction No. 20 does not render harmless the giving of an erroneous instruction on the same subject. (*Harris v. People,* 32 Colo. 211, 75 Pac. 427; 1 Blashfield Ins. to Juries, sec. 78; *State v. Webb,* 6 Ida. 428, 55 Pac. 892.)

The court erred in giving instruction No. 46, in regard to character evidence to the jury. (*Latimer v. State,* 55 Neb. 609, 70 Am. St. 403, 76 N. W. 207; *State v. Van Kuran,* 25 Utah, 8, 69 Pac. 60; *People v. Garbutt,* 17 Mich. 9, 97 Am. Dec. 162; *Commonwealth v. Leonard,* 140 Mass. 473, 54 Am. Rep. 485, 4 N. E. 96; *Powers v. State,* 74 Miss. 777, 21 So. 657; *Edgington v. United States,* 164 U. S. 361, 17 Sup. Ct. 72, 41 L. ed. 467; *Remsen v. People,* 43 N. Y. 6; *People v. Casey,* 53 Cal. 360; Hughes, Instructions to Juries, sec. 341.)

D. C. McDougall, Attorney General, J. H. Peterson, Assistant, and Owen M. Van Duyn, Prosecuting Attorney of Canyon County, for Respondent.

From the earliest time until the case of *People v. Nogiri,* 142 Cal. 596, 76 Pac. 490, decided by the supreme court of California, in 1904, that court uniformly held in a long line of cases that the public prosecutor, in filing his information, was governed, not by the commitment of the magistrate, but by the depositions taken at the preliminary hearing. (*People v. Vierra,* 67 Cal. 231, 7 Pac. 640; *People v. Lee Ah Chuck,*

66 Cal. 662, 6 Pac. 859; *People v. Christian,* 101 Cal. 474, 35 Pac. 1043.)

At the time of the adoption of this statute (sec. 7579), the California court was holding in line with the above authorities. In adopting a statute from a sister state, the construction which has been put upon that statute by the courts of that state is adopted with the statute. (*Territory v. Evans,* 2 Ida. 651, 23 Pac. 232.)

"The prosecutor has a right to describe the offense, as it is declared by the facts appearing upon preliminary examination." (*People v. Karste,* 132 Mich. 455, 93 N. W. 1081; *Brown v. People,* 39 Mich. 37; *Alderman v. State,* 24 Neb. 97, 38 N. W. 36; *State v. Jarrett,* 46 Kan. 754, 27 Pac. 146; *State v. Reedy,* 44 Kan. 190, 24 Pac. 66; *Redmond v. State,* 12 Kan. 172.)

The state of Washington holds definitely to the doctrine that the basis of the information is the depositions taken at the preliminary hearing (*State v. Myers,* 8 Wash. 177, 35 Pac. 580), and has a statute identical with our statute. (Sec. 7660, Rev. Codes. See Ballinger's Code, sec. 6835; *State v. Farris,* 5 Ida. 666, 51 Pac. 772.)

The defendant was not prejudiced by the information filed against him charging murder, when as a matter of fact he was convicted of the crime for which he was committed and for the crime for which he contends he should have been committed in the first instance. (*Territory v. Evans,* 2 Ida. 651, 23 Pac. 232; *State v. Rice,* 7 Ida. 762, 66 Pac. 87; *Territory v. Neilson,* 2 Ida. 614, 23 Pac. 537.)

AILSHIE, J.—On February 25, 1908, the prosecuting attorney of Canyon county filed an affidavit or complaint with a justice of the peace of Canyon county, charging the appellant, James McGreevey, with the crime of murder committed by shooting and killing one W. Grant Whitney. The defendant was arrested and taken before the justice, and his preliminary examination was duly and regularly held in conformity with the requirements of law. Thereafter and on the 29th day of February, and after the evidence had all been

submitted, the magistrate made an order holding the defendant for appearance in the district court on the charge of manslaughter and made and indorsed his order on the affidavits as required by law. On March 21st the prosecuting attorney filed his information in the district court charging the defendant with the crime of murder in the first degree. The defendant appeared for arraignment and thereupon filed his motion to quash the information on the ground that he had never been committed by a magistrate for the crime of murder, and that he had never been held for that or any other or higher offense than that of manslaughter. The court overruled the motion, and the appellant assigns the ruling as error. The defendant was thereafter tried upon the charge of murder and was convicted for the crime of manslaughter and sentenced to imprisonment, and has appealed from the judgment and order denying his motion for a new trial.

The first question to be considered is the action of the court in overruling the motion to quash the information. Upon the threshold of this inquiry we are confronted by the provision of sec. 8 of art. 1 of the constitution, which constitutes an express limitation in this state on the power to prosecute on information for felonies and criminal offenses of any grade above that "cognizable by probate courts or by justices of the peace." This provision of the constitution is as follows:

"No person shall be held to answer for any felony or criminal offense of any grade, unless on presentment or indictment of a grand jury or on information of the public prosecutor, after a commitment by a magistrate, except in cases of impeachment, in cases cognizable by probate courts or by justices of the peace, and in cases arising in the militia when in actual service in time of war or public danger: Provided, that a grand jury may be summoned upon the order of the district court in the manner provided by law: and, provided further, that after a charge has been ignored by a grand jury, no person shall be held to answer or for trial therefor upon information of the public prosecutor."

It is urged by the appellant that under this constitutional provision the prosecuting attorney has no power or authority

to file an information for any offense other than the one for which he was committed by the magistrate. It is argued that the phrase "after a commitment by a magistrate" refers to the specific offense for which the information is filed, and that without "a commitment" for such offense there is no foundation for an information. This section of the constitution as originally reported to the constitutional convention by the committee on "Bill of Rights" authorized prosecutions on information without any previous preliminary examination or commitment. The report of the committee at once precipitated a debate over the question of prosecutions on information, and without indictment or presentment by a grand jury. Mr. Claggett, president of the convention, offered an amendment inserting the words "after a commitment by a magistrate" immediately following the word "prosecutor." This amendment was likewise discussed and debated, and in course of the discussion, speaking of the position of the defendant and the condition of the case against him after a commitment by a magistrate, Mr. Claggett said: "The committing magistrate has already passed upon the question. There is a presumption that there is probable cause, or rather, it has been adjudicated that there is.probable cause for holding the party over, and that is all the grand jury is entitled to do, to say that there is probable cause to believe the man is guilty, and after the committing magistrate has passed upon it, there is no reason why the district attorney should not draw up the presentment and present it to the court without the intervention of the grand jury." The only objection that was urged to this amendment and to the line of argument made by Mr. Claggett was, that the average justice of the peace or magistrate would simply follow the advice and direction of the prosecutor anyway, and it was stated by one of the members that his experience had been "that with most magistrates it seems that the dictum of the district attorney is the end of the law." The amendment was adopted as proposed.

We have not been able to find a constitutional provision in any of the states in the exact language or form of this section of our constitution. There is, however, a statute in the

state of Michigan (sec. 11940, Comp. Laws 1897) very similar to our constitutional provision. It reads: "No information shall be filed against any person for any offense until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace, or other examining magistrate or officer, unless such person shall have waived his right to such examination, provided, however, . . . . etc." This statute appears to have been in force in Michigan since about 1871. In that state they do not appear to have any constitutional provision whatever on this subject. Under this statute it has been repeatedly held by the supreme court of Michigan that no information could be filed by the prosecutor until after a preliminary examination, and then only for the offense for which the defendant had been held by the magistrate.

*Yaner v. People,* 34 Mich. 286, was a case identical in its facts with reference to preliminary examination, commitment, and information, with the case at bar. The court speaking of the examination said:

"And it is only when it shall appear from such examination that an offense not cognizable by a justice of the peace has been committed, and that there is a probable cause to believe the prisoner guilty thereof, that he can be held for trial. (Comp. Laws 1871, secs. 7859, 7860.) The clear evident intent of this statute was that the magistrate should exercise his best judgment in the matter; that he should from the testimony determine whether the crime charged in the warrant had been committed; or where, as in this case, the offense charged includes one or more of lesser degree, the magistrate should determine which offense, if any, had been committed, so that the accused might not be placed upon trial in the circuit to answer to a charge different or greater than the one on which he had been examined, and to answer which he had been held for trial. If this were not so, we should have the magistrate binding over for one offense, and the prosecuting attorney filing an information for another and different one; or the magistrate binding over to answer to an

offense of one degree, and the prosecuting attorney filing an information for a like offense of a higher degree."

This case seems to have been uniformly followed and repeatedly approved by the Michigan court. (See *Brown v. People*, 39 Mich. 37; *People v. Evans*, 72 Mich. 367, 40 N. W. 473; *People v. Bechtel*, 80 Mich. 623, 45 N. W. 582; *People v. Pichette*, 111 Mich. 461, 69 N. W. 739.)

In Wyoming the matter of prosecution by information is regulated by statute rather than by constitutional provision. The statute on the subject is as follows:

"No information shall be filed against any person for any felony until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace or other examining magistrate or officer, and shall have been held for trial by such court or officer, unless such person shall have waived his right to such examination; provided, however, that such information may be filed without such examination against fugitives from justice."

In *State v. Boulter*, 5 Wyo. 236, 39 Pac. 883, the court considered this statute and the power of the prosecuting attorney to file an information, and held that: "A prosecuting attorney can proceed by information only for the offense designated by the magistrate who holds the examination." In that case the court held that the statute did not vest any judicial discretion in the prosecuting attorney or any authority to determine for what crime he would file his information, but that, on the contrary, the action of the magistrate supplied the action of a grand jury, and that the province of the prosecutor was simply to discharge the clerical and ministerial act of preparing and filing the information.

In California they have a constitutional provision on the subject and also statutes very similar to ours. The constitution of California, sec. 8 of art. 1, is, however, different from our constitutional provision and is not expressed in the negative or prohibitive form. It says: "Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, or by indictment, with or without such examination or

commitment, as may be prescribed by law. . . . ." The supreme court of California prior to 1904 uniformly held that the prosecutor was not limited to the offense for which the prisoner was committed, but that he might file his information for any offense disclosed by the depositions. (*People v. Vierra,* 67 Cal. 231, 7 Pac. 640; *People v. Lee Ah Chuck,* 66 Cal. 662, 6 Pac. 859; *People v. Christian,* 101 Cal. 474, 35 Pac. 1043.) On March, 1904, the supreme court of California decided the case of *People v. Nogiri,* 142 Cal. 596, 76 Pac. 490, and overruled all the former decisions on this question, and held, "that where one is committed for a certain offense by the examining magistrate, the district attorney has no authority to file an information against him for another offense." After reciting the provisions of the constitution and statute on the subject and in passing upon the principle involved, the court said:

"There is thus neither in the constitution nor in the laws enacted in furtherance of it the slightest vestige of judicial, discretionary, or appellate power given to the district attorney in controlling the action of the committing magistrate. His functions are ministerial purely. He is told to file an information charging the defendant with the offense for which, after judicial inquiry, he has been held to answer. It is to be remembered that the examination and commitment by a magistrate for a felony is but substituted process for the action of the grand jury in finding an indictment, and the district attorney occupies no higher nor different place in the one mode of investigation than he does in the other. A grand jury inquires as to the commission of a felony, and believes that a true bill should be found against John Doe, charging him with manslaughter. It becomes the duty of the district attorney, under the instructions of the grand jury, to frame such a bill, and his powers go no further than to do so. He may advise the grand jury, but when finally they have reached their determination, and given him his instructions, his sole duty under the law is to obey them. So in the case of the examination held before the committing magistrate, it is not in contemplation of the law that the district attorney may

substitute his judgment for that of the judicial officer, and lay any charge against an offender other than that for which the magistrate, like the grand jury, has decided that he should be put upon trial.''

In Kansas the right to prosecute on information seems to be regulated by statute alone, the statute reading: ''No information shall be filed against any person for any offense until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace.'' In *State v. Spaulding,* 24 Kan. 1, Justice Brewer, then on the supreme bench of Kansas, and speaking for the court as to the manner of stating the charge before the magistrate and the subsequent information, said:

''It will be remembered that these preliminary proceedings are generally had before justices of the peace, officers not learned in the law, and if the same fullness and precision, the same precautions against all the contingencies of the testimony were required there as in the information or indictment, justice would be often delayed and defeated. All that can be required is, that there shall be a single statement, containing the substantial facts of the offense charged, and then the prosecutor, in preparing the information, may use many counts, varying in them the formal and nonessential matters of the crime. He may not add a new offense. To larceny he may not add robbery; nor to murder, arson. Neither may he add to the larceny of one piece of property, the larceny of another. He may not substitute one offense for another; but he may, by several counts, guard against the contingencies of the testimony.''

This rule seems to have been uniformly followed and approved by the Kansas court. (See *State v. Reedy,* 44 Kan. 190, 24 Pac. 66; *State v. Jarrett,* 46 Kan. 754, 27 Pac. 146; *State v. Goetz,* 65 Kan. 125, 69 Pac. 187.)

The same question arose in the state of Washington, and the supreme court in the case of the *State v. Myers,* 8 Wash. 177, 35 Pac. 580, disposed of the question summarily without giving it any consideration in the written opinion. The court said: ''We know of no law requiring the information

to charge the same crime as that named in the commitment.''
Whether or not the matter was fully presented or considered
by the court, we are not advised. An examination of the con-
stitution and statutes of Washington, however, discloses that
they differ essentially and materially from the provisions
found in this state. (Sec. 25, art. 1, Const. of Wash.; secs.
6801 and 6802, Ballinger's Codes of Wash.) In that state a
preliminary examination and commitment is not essential or
a prerequisite to the filing of an information by the prosecu-
tor.

In Wisconsin it is held that the prosecutor may file an in-
formation for any offense disclosed by the depositions, but
this is regulated by statute. Sec. 4653 of the Wisconsin stat-
utes of 1898 specifically provides that the prosecuting attor-
ney may file his information for any offense disclosed by the
evidence as set forth in the depositions, whether it be the
offense on which he was examined or for which he was com-
mitted or for some other offense.

After an examination of the various constitutional and
statutory provisions of the different states on this subject
and the constructions placed upon them by the highest courts
of the states, we conclude that the general and prevailing opin-
ion is to the effect that where the statute or constitution says
that ''no information shall be filed against any person until
such person shall have had a preliminary examination'' or
until ''after a commitment by a magistrate,'' such provision
has the effect of prohibiting the filing of an information for
any other offense than that for which the accused was held
by the committing magistrate. Such is clearly and unmis-
takably the meaning and intent of our constitutional provision.
It was undoubtedly the intention of the constitutional con-
vention, when inserting the clause ''after a commitment by
a magistrate,'' in sec. 8 of the Bill of Rights, to prohibit the
trial of any person for a felony or other offense, not cognizable
by a probate or justice court, until after he had been ac-
corded a preliminary examination and been committed to
answer therefor by the committing magistrate. It was in-
tended by this prohibition to accord every accused person a

hearing before a committing magistrate on the particular offense for which he was subsequently to be tried on information of the public prosecutor. It was likewise intended that the "probable cause" for informing against the defendant and putting him on trial in the district court should first be found by the magistrate. The act of preparing the information was left to the prosecutor, and is a ministerial act the same as if he were preparing an indictment or presentment for the grand jury. The statute adopted in order to carry out the provisions of the constitution provides, among other things, as follows (sec. 7662, Rev. Codes): "No information shall be filed against any person for any offense, until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace or other examining magistrate or officer, unless such person shall waive his right to such examination, . . . . etc." It will be observed from the provisions of this statute that an information cannot be filed against a person for any offense until he has first had a "preliminary examination therefor"; that is, he must have first had a preliminary examination for the particular offense charged by the information of the public prosecutor. To the same effect see *State v. Braithwaite,* 3 Ida. 119, 27 Pac. 731; *State v. Farris,* 5 Ida. 666, 51 Pac. 772; *In re Knudtson,* 10 Ida. 676, 79 Pac. 641.

The authorities all agree that no formal or detailed charge or description of the offense is necessary in the complaint before the magistrate, and that all that is required is a general description or designation of the offense so that the defendant may be given a fair opportunity to know, by a proffered preliminary examination, the general character and outline of the offense for which he is to have an examination. (*State v. Jarrett,* 46 Kan. 754, 27 Pac. 146; *People v. Bechtel,* 80 Mich. 623, 45 N. W. 582; *People v. Pichette,* 111 Mich. 461, 69 N. W. 739.)

It is also true that a preliminary examination on the charge of murder necessarily includes all the degrees of murder and manslaughter as well. An examination for the greater offense would include the lesser offenses which are necessarily

and as a matter of law included within the offense named
and charged. So in this case the examination on the charge
of murder included the charge of manslaughter, and it was
within the power of the magistrate to hold the defendant for
manslaughter, but it was not within the power or authority of
the prosecutor to file an information under that commitment
for a higher or different offense than that for which he was
committed.

Counsel for the state cite *State v. Farris,* 5 Ida. 666, 51
Pac. 772, and *In re Knudtson,* 10 Ida. 676, 79 Pac. 641, as
supporting the contention that the prosecutor may file his in-
formation for any offense disclosed by the depositions taken,
whether or not it be the offense for which the accused was
committed by the magistrate. In *State v. Farris* the court
held that "a preliminary examination upon the offense
charged is an essential prerequisite in the filing of an informa-
tion." It is true that in course of the discussion of that point
the court observed that the information would be controlled
by "the offense established by the depositions upon the pre-
liminary examination." Viewing this latter expression, how-
ever, in the light in which it was used, we do not think it had
reference to the question now under discussion or as in any
respect supporting the position of the state in this case. In
the Knudtson case the court held that the information could
not charge any offense that was not disclosed by the deposi-
tions. We fail to find anything in the cases from this court
that in any way conflicts with the views herein expressed.

The rule adopted in this opinion can in no way hamper or
embarrass the prosecution of crimes. Under the statute it is
made the duty of the prosecuting attorney to attend before
magistrates and conduct preliminary examinations. (Sec.
2082, Rev. Codes.) He may cause an examination to be had
for such offense as he deems proper.

The next question to be considered in this case is the objec-
tion urged against the action of the court in giving to the
jury instruction No. 33 on the right of self-defense. In this
case the killing was admitted. There were a number of eye-
witnesses to the occurrence. The defendant offered to justify

his action on the grounds of self-defense and produced evidence to establish that defense. The court by subdivision 3 of his instruction No. 20 set forth very clearly and concisely the law on the subject of self-defense as follows:

"Where one without fault is placed under circumstances sufficient to excite the fears of a reasonable person that another designs to commit a felony or some great bodily injury upon him, and to afford grounds for a reasonable belief, as a reasonable man, that there is imminent danger of the accomplishment of the design, he may, acting under these fears alone, slay his assailant and be justified by the appearances. And as, where the attack is sudden and the danger imminent, he may increase his danger by retreat, so situated he may stand his ground, that becoming his 'wall,' and slay his aggressor, even if it be proved that he might more easily have gained his safety by flight. So too, under such circumstances he may pursue and slay his adversary. But the pursuit must not be in revenge nor after the necessity for the defense has ceased, but must be prosecuted in good faith for the sole end of winning his safety and securing his life."

To this instruction no objection is made. Succeeding that he gave instruction No. 33, which is as follows:

"The court instructs the jury that before a party can justify the taking of life in self-defense he must show that there was reasonable ground for believing that he was in great peril and that the killing was necessary for his escape and that no other safe means was open to him. When one believes himself about to be attacked by another and to receive great bodily injury, it is his duty to avoid the attack if he can safely do so; and the right of self-defense does not arise until he has done everything in his power to avoid this necessity."

The latter instruction needs no discussion or argument to disclose that it is erroneous. The law has never prevailed in this country as enunciated in instruction 33. In the first place, a person confronted with great danger, or what would appear to a reasonable person as great danger, has a clear legal right to act upon *appearances* such as would influence

the action of a reasonable person. It may turn out that no *actual* danger whatever confronted him and that the whole thing was only an *apparent danger,* but the law of self-defense does not require a man to wait until he ascertains whether the danger is apparent or real. Acting as a reasonable man would act under similar circumstances, he may take steps to defend himself and may for that purpose become an actor himself. The most serious objection to this instruction, however, is found in the latter part thereof wherein the court told the jury that "the right of self-defense does not arise until he has done everything in his power to avoid this necessity." This is not the test to be applied, and it is not the rule to be given to a jury as the law of self-defense. A man placed under an apparently threatening and menacing danger is only expected to act as a reasonably prudent person would act under similar circumstances and surroundings. Under such circumstances he ordinarily has but a moment for deliberation and decision. It might so happen that, as a matter of fact, he could have done any one of a number of other things, and thereby have avoided the danger and refrained from committing the homicide. After he has acted he cannot be judged from the theoretical standpoint of the man who is resting in both apparent and real safety, confronted by no danger and menaced by no threats or demonstrations of sudden violence and felonious import. He must act quickly. He must act as a reasonable and prudent man would be likely to act under similar conditions and circumstances, and this is all the law, reason or justice demands.

This question was considered at some length by Justice Harlan of the supreme court of the United States in *Beard v. United States,* 158 U. S. 550, 15 Sup. Ct. 962, 39 L. ed. 1086. In that case the court considered instructions which in effect told the jury that the accused must have done everything within his power to avoid the killing before he could justify on the ground of self-defense. The court said that such had never been the law in this country, and reviewed the authorities on the subject. (See *Kirk v. Territory,* 10 Okl. 46, 60 Pac. 797.) It should also be observed that instructions num-

bered 20 and 33 above quoted are in direct conflict with each other, and bearing upon the same subject as they do, the jury was left to grope in the dark as to the true rule of law to be applied in such case.

The defendant also complains of the action of the court in giving instruction No. 46. That instruction is as follows:

"The jury are instructed that in this trial testimony of the previous good character of the defendant as a peaceable law-abiding citizen is proper evidence to be submitted to the jury, and should always be considered by the jury in connection with the other evidence and circumstances in this case, and if the jury find from all the evidence, including the evidence of good character, that there is reasonable doubt as to the guilt of the accused, they should acquit. If, however, the jury believe from the evidence beyond a reasonable doubt that the defendant committed the crime in question as charged in the information, it will be your sworn duty as jurors to find the defendant guilty, even though the evidence may satisfy your minds that the defendant previous to the commission of the alleged crime had sustained a good reputation as a peaceable law-abiding citizen; but the evidence of good character is to be considered with all the other evidence in the case in determining whether the witnesses who have testified to facts tending to incriminate him have been mistaken or have testified falsely or truthfully."

The particular objection made by defendant to this instruction goes to the latter part of the instruction, in which the court told the jury that the evidence of good character is to be considered "in determining whether the witnesses who have testified to facts tending to incriminate the defendant have been mistaken or have testified falsely or truthfully." While this portion of the instruction may not have been so prejudicial to the defendant that it materially affected the verdict in the case, still it is contrary to the authorities. (*Latimer v. State*, 55 Neb. 609, 70 Am. St. 403, 76 N. W. 207; *State v. Van Kuran*, 25 Utah, 8, 69 Pac. 60.) In the former of these cases, the court, speaking of an instruction containing sub-

stantially the same provision as the latter part of the foregoing instruction, said:

"When one is accused of crime, evidence of his previous good character is admissible, in his behalf, upon the theory that, being of good character, it is improbable that he would have committed the crime with which he is charged; and it is for the jury to weigh and consider, and give such effect as they think it entitled, in considering and determining whether the accused is guilty of the crime with which he is charged. But this evidence is not submitted to the consideration of the jury, for the purpose of enabling them to determine whether witnesses who have testified for the state have been mistaken or testified falsely, as the court told the jury in instruction No. 14."

Evidence of the good character of the accused is usually admitted in cases of circumstantial evidence against the defendant, and also in cases where the commission of the offense is admitted and the plea of self-defense is interposed. In the latter class of cases such evidence is introduced not for the purpose of disputing or contradicting the witnesses who have testified against the defendant, but more particularly for the purpose of showing that the defendant when he committed the fatal act did so under an honest and conscientious belief that it was necessary for the protection of his person or his life. It tends in fact to show that he acted with good motives, and on the contrary tends to disprove that he was acting with a bad, malicious, or criminal motive or intent. The fact that a man has always been a peaceable and law-abiding citizen raises a presumption in favor of his good motives when he commits a given act. Evidence of the good character of the accused should go to the jury for their consideration the same as any other evidence in the case, and should not be limited in its scope or effect.

Since a new trial may be had in this case, there is one further question that it will be necessary for us to consider. In the trial in the lower court one J. E. Creswell was called as a witness on behalf of the state, and in course of the examination he was asked what occurred in his saloon at Payette in

October, 1907, in regard to any threat the defendant might have made. To this counsel for defendant objected. The court overruled the objection, and the witness answered as follows:

"Defendant had a gun in his possession and was changing it from one pocket to another so that I saw the gun; he was talking there, nothing in regard to anything. I tapped him on the shoulder and said, 'You had better leave that with me until you get ready to go home'; he stepped around the end of the bar and partly taking it out of his pocket and I took it the rest of the way out and put it in the safe. He came in there and was standing there changing it from one pocket to another, so that I seen he had his gun, but he had said nothing at that time, and I tapped him on the shoulder and told him to step around the end of the bar and that he had better give the gun to me, or leave it until he was ready to go home, and he did, and I put it in the safe and kept it there for about a week. When he got ready to go home, he wanted me to give it to him; said he had that gun for a purpose and might need it. A little bit afterward he said he wanted it when he got ready to go home, that he had it for a purpose and might need it. He came to get it about a week afterward, but said nothing at that time, he asked me for his gun and I opened the safe and gave it to him. This occurred at Bank's Saloon at Payette in Canyon county, Idaho. I think I got the gun on October 23d, and gave it to him on the 30th. This was in October, 1907."

This evidence was inadmissible, and could have served but one purpose, and that was to disclose the fact that the defendant at some previous time had been carrying a gun and conveyed an insinuation without any direct proof that he was carrying the gun for Whitney. It will be observed that the witness in no way refers or connects the conversation with Whitney, either directly or indirectly, nor does it appear that the witness even thought or had any reason to believe that the defendant had any reference to Whitney when he said he might need the gun. A man may need a gun for a great many things other than that of shooting his neighbor. In

fact, it should be presumed in the first instance that a man is going to use his gun for a lawful purpose and that he is not out gunning for his neighbor. It was eminently proper for the state to prove any threats that the defendant might have made against the person of Whitney, but the evidence above recited was entirely disconnected and dissociated from any reference to Whitney whatever or to any unlawful purpose.

We do not find any other question in this record that requires or deserves our further consideration. The judgment is *reversed* and the cause is remanded, with direction to the trial court to sustain the motion to quash and set aside the information. This will not prevent the prosecutor from filing an information for manslaughter if he feels that the evidence will justify a trial on that charge.

Judgment *reversed* and cause remanded.

Sullivan, C. J., and Stewart, J., concur.