50 N.J. Super. 298 (1958)
142 A.2d 108
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HENRY MAXWELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1958.
Decided June 2, 1958.
*300 Before Judges PRICE, HANEMAN and SCHETTINO.
Mr. Frank G. Schlosser argued the cause for defendant-appellant (Mr. William J. McGovern, on the brief; Messrs. Mackerley and Friedman, attorneys).
Mr. Wilbur M. Rush argued the cause for respondent.
The opinion of the court was delivered by PRICE, S.J.A.D.
Appellant seeks to reverse a judgment of conviction entered against him as the result of the verdict of a jury on an indictment for atrocious assault and battery, N.J.S. 2A:90-1, returned to the Superior Court, Warren County.
Defendant Maxwell was jointly tried with one John C. Snyder against whom a similar but separate indictment had been returned. Both defendants were convicted. Snyder has not appealed. The atrocious assault and battery was alleged to have been committed by Maxwell and Snyder on one Donald Martin in White Township, Warren County, N.J., on June 15, 1957. The defense was a complete denial of the commission of the crime, with the added contention by defendants that they were not at the scene at the time *301 of its alleged commission. They offered alibi witnesses. The trial took place, by assignment, before the County Court judge and a jury on November 22, 1957. Judgment was entered December 20, 1957. The judgment suspended the imposition of any jail sentence, defendant was placed on probation for a period of three years and fined $500. By virtue of R.R. 1:4-3(d) the probationary order was stayed pending appeal. On application by defendant payment of the fine was similarly stayed.
Counsel for defendant Maxwell in his brief and at the argument of the appeal asked that, should reversal be ordered on the appeal by defendant Maxwell on some ground applicable to both defendants, Snyder be afforded such relief as justice would dictate.
Appellant Maxwell contends that the trial court erred in refusing to grant defendant's motion for acquittal based on the contention that atrocious assault and battery had not been proved. The motion was based on the ground that the elements of wounding or maiming, essential to the offense had not been established.
Emphasis is placed by appellant on the contention that the crime of atrocious assault and battery remains indictable as a high misdemeanor under the provisions of N.J.S. 2A:90-1 which provides:
"Any person who commits an atrocious assault and battery by maiming or wounding another is guilty of a high misdemeanor." (Emphasis supplied.)
The case of State v. Capawanna, 118 N.J.L. 429 (Sup. Ct. 1937), affirmed 119 N.J.L. 337 (E. & A. 1938), is cited in support of the claim that the indictable offense of atrocious assault and battery requires the element of atrociousness in the form of a "maiming or wounding," savage and cruel in character. It is emphasized that such crime is in contrast to the offense of assault and battery now downgraded to constitute the violator a disorderly person. Assault and battery is no longer an indictable offense. N.J.S. 2A:170-26. State v. Chiarello, 17 N.J. 36 *302 (1954). Appellant urges that the evidence in the case at bar establishes neither maiming nor wounding of the complaining witness.
We are of the opinion that the trial court properly denied the defendant's motion for a judgment of acquittal. The indictment alleged that the defendant "did commit an atrocious assault and battery upon Donald Martin by atrociously striking, beating, cutting, lacerating, wounding and maiming him * * *." The testimony on behalf of the State was that Maxwell and Snyder in separate automobiles forced Martin's automobile to stop as he was driving with his sister on Buckley Avenue in White Township aforesaid, ordered him out of the car; that Maxwell swung at him and missed him, then Snyder tackled him and brought him to the earth, "wrapped" his arm around a roadside fence cable and then both Maxwell and Snyder kicked and punched him in the chest, face, and legs. He was badly bruised and injured in his back, thighs, face and nose. He sustained abrasions of the soles of his feet. He suffered a laceration near his eye. His nose and the laceration near his eye bled. The laceration required suturing. His foot, arm and leg had to be bandaged and he was given a tetanus shot. His right arm, wrist and right leg were swollen. His injuries required treatment by his physician on three or four occasions. Martin weighed about 165 to 170 pounds; Maxwell about 250 pounds. The nature of the attack and the resulting injuries were within the scope of the indictment and the statute. State v. Capawanna, supra; State v. McGrath, 17 N.J. 41, 49 (1954); cf. State v. Riley, 49 N.J. Super. 570, 576 (App. Div. 1958).
Appellant contends that the "evidence did not permit the jury to find that the victim had been savagely and brutally assaulted" and that the prosecution "utterly failed to show by its proof any more than an assault and battery." We find no merit in this contention.
Appellant charges prejudicial error in the refusal of the trial judge to grant the application of counsel for defendants Maxwell and Snyder for the issuance of a bench warrant *303 to compel the attendance of a defense witness who had failed to respond to a duly served subpoena. Initially the court granted the motion for the issuance of the bench warrant for the witness, one Howard Bankhardt, and then revoked his action and denied the application. Defendant Maxwell contends that the trial court's action deprived him of his right to compulsory process in violation of the Sixth Amendment of the Constitution of the United States of America and in violation of Article I, paragraph 10 of the New Jersey Constitution, 1947. Consideration of the propriety of the trial court's action requires a detailed review of the evidence.
The complaining witness Donald Martin and his sister Alice Martin had testified that the assault occurred on Buckley Avenue, Oxford, which avenue leads to Cornish. After the assault he and his sister went to his father's home in Cornish. From there he was driven to Warren Hospital where he was treated by a doctor. An analysis of the testimony of Martin and his sister would indicate that the assault occurred some time after 5:40 P.M. They arrived at his father's home, after the assault, at 6:25 P.M. or 6:30 P.M. They testified that the period of the assault was 20 to 30 minutes.
As heretofore stated, Maxwell and Snyder in denying their guilt relied heavily on evidence tending to prove an alibi with reference to the time of the alleged assault and battery. Testimony on behalf of defendants was introduced as follows.
A witness Alton Kuhnsman, owner of a store in Oxford which defendant used as a base for his television business, testified that Maxwell was at his store at about 5 P.M. on the day in question.
A witness Francis Yankers, whose testimony was somewhat indefinite, testified that he worked in Shaffeur's garage operated by one Cleaves in Washington, that Maxwell came there between 4:45 P.M. and 5 P.M. and left shortly after 5:15 P.M.
Defendant Maxwell, who resided at Oxford and was a television mechanic and also sold television sets, testified that he arrived at Shaffeur's garage at about 5:05 P.M. and *304 left there at 5:30 to 5:35 P.M. and drove to Hackettstown Sunoco Station operated by Bankhardt arriving there about 5:50 P.M.
Walter Robert Hicks, who has a home located about four and a half miles from Oxford on a road known as the Mt. Bethel-Pohatcong Mountain Road, testified that Maxwell came to his house to repair a television set arriving at about 6:08 P.M. on the day in question and stayed there until approximately 6:35 P.M. Helen Hicks, wife of the last mentioned witness, fixed the time of defendant Maxwell's visit at the Hick's home at approximately the same time stated by her husband.
Defendant Maxwell had subpoenaed Bankhardt and, on his failure to answer his name when called as a witness, counsel for defendants asked the court to issue a bench warrant in order that Bankhardt might be brought to court to testify. At a colloquy at side bar defendants' counsel advised the court that the witness Bankhardt was an essential witness in support of the alibi projected by defendant Maxwell and the court ordered the issuance of a bench warrant. Thereafter, when defense counsel called Mrs. Hicks as a witness and before she testified, the court again asked counsel to confer with him. Despite the reiteration by defendants' counsel that Maxwell contended that he was in Hackettstown at the Bankhardt garage as aforesaid the court took the position that the evidence was cumulative and based its changed ruling on the fact that Mr. and Mrs. Hicks would testify with reference to Maxwell's presence in Hackettstown. The following colloquy occurred:
"Mr. McGovern: This is as to what he stated to me that he would tie in the fact that Mr. Maxwell, after leaving the Cleaves' Garage, went down to Hackettstown to see him and from his garage left to go to the house of Mrs. Hicks. In fact, tying of exactly where he was from the time he left Cleaves' until he left the Hicks' house.
The Court: All right, I shall issue a bench warrant.
(The following is in the presence of the hearing of the jury):
Mr. McGovern: Mrs. Helen Hicks.
The Court: Well, let me see counsel again.
*305 (The following occurred out of the hearing of the jury at sidebar):
Mr. McGovern: It is the time from the time he left the Cleave's garage.
The Court: When was he in Hackettstown?
Mr. McGovern: He was in Hackettstown between five-thirty and six  a quarter of six.
The Court: Why do you need Bankhardt? You are going to prove he was in Hackettstown, so there you have him in Hackettstown.
Mr. McGovern: I want every possible 
The Court: I am not going to allow the bench warrant. You have proof by this witness he was in Hackettstown at this time?
Mr. McGovern: No, your Honor, from Hackettstown he went to the Hicks.
The Court: All right, you are going to show he was in there at that time?
Mr. McGovern: Not by Mr. Bankhardt.
The Court: What about the Hicks?
Mr. McGovern: After he left Bankhardt's garage.
The Court: You have both Hicks. I am not going to issue the bench warrant.
Mr. McGovern: Note my exception."
Despite assertion by defendants' counsel that Maxwell's call at the Hicks' home was after he allegedly left the Bankhardt station, the trial court revoked its order for the issuance of the bench warrant and defendant was deprived of the compulsory attendance of the witness Bankhardt.
In considering this matter it is important to note that we refrain from expressing any opinion as to the quality of the alibi projected by defendants or the reaction of the jury to the alibi evidence, as reflected by its verdict. For the purpose of proper consideration of the challenged action of the court it is unnecessary to speculate as to what effect Bankhardt's asserted testimony would have had upon the jury when viewed in conjunction with the testimony offered by the other alibi witnesses. Our consideration of this matter must of necessity be resolved without reference to the credibility of the alibi testimony. On the basis of the proposed proofs to be presented through the medium of Bankhardt's testimony defendants should have been permitted to compel his attendance, as it was asserted that he could furnish evidence corroborative of Maxwell's claimed absence from the scene of the crime.
*306 The State seeks to sustain the ruling of the trial judge by reliance on the decision of State v. Mucci, 25 N.J. 423 (1957). The distinction between that case and the case at bar, however, is that the proposed testimony of Bankhardt was not merely cumulative but, as asserted by defendants' counsel, would have included a period of time with reference to the activity of defendant Maxwell which was not covered by any other witness. It was a vital link in the chain of defendant's alibi.
We hold that the court committed prejudicial error in its refusal to grant the order for the issuance of a bench warrant to compel the attendance of the witness Bankhardt.
We are also of the opinion that the court erred in excluding the evidence which sought to affect the credibility of the complaining witness Martin and to demonstrate that the charge against the defendants was "a frame up." The issue was raised under cross-examination of the complaining witness whereby the counsel for defendant Maxwell sought to establish the fact that Maxwell, who had been a traffic officer in Oxford in the early part of 1957, had issued a summons for a motor vehicle violation against the complaining witness and had thereby incurred his resentment; that on June 8, 1957, seven days before the alleged assault, the complaining witness had allegedly, in speaking with another person at a tavern on the road between Oxford and Washington, threatened to "get even with Maxwell." Defendant Maxwell urges that it was of the utmost importance for the defendants, who denied the commission of the crime, to show that, if the complaining witness had been assaulted as he maintained, the assault had been committed by some person or persons other than defendants. On this phase Maxwell asserts that the credibility of the complaining witness would have been affected adversely by proof of any plot to "get even with Maxwell." The court barred evidence of any examination referable to this matter, including the evidence of the alleged conversation at the tavern. Later in the trial defendants called a witness who allegedly had overheard the conversation at the tavern. The court, despite *307 the assertion by defendants' counsel that the testimony was offered to affect the credibility of the complaining witness, ruled that the proffered testimony was immaterial and refused its admission.
We hold that defendants' counsel had the right to cross-examine the complaining witness with reference to the claimed incident in question and had a right to pursue this inquiry with a witness who was said to have been present at the time of the alleged conversation. State v. Pontery, 19 N.J. 457, 471 (1955).
In view of our finding that errors prejudicial to the defendant Maxwell were made at the trial of this matter and that the conviction of Maxwell must be set aside, it is unnecessary for us to consider the remaining points raised by said defendant in his brief and in the oral argument of his counsel.
Reference has heretofore been made to defendant Snyder who testified at the trial that he was with Maxwell earlier in the afternoon of June 15, 1957; that he separated from him at approximately 3:45 P.M. or 4 P.M. and drove to Allamuchy, N.J. where he went to an inn and stayed there until approximately 7 P.M., from whence he went to Hackettstown. He claimed he did not know the location of Buckley Avenue; that he did not know Martin on June 15, 1957; that he had not seen him on that day nor had he seen him until about three weeks thereafter when he saw him at the police barracks. He denied knowing Alice Martin also.
As defendants Maxwell and Snyder were tried together and both were identified by the complaining witness Martin and his sister, and both defendants denied participation in the crime and presented evidence in support of their contention that they were not at the scene of the crime, it is clear that the action of the trial court in refusing the issuance of the bench warrant for Bankhardt affected both defendants adversely. Martin and his sister claim this was a joint assault on them and that both defendants participated in the assault from its inception.
*308 Finding as we have that error has been committed in the trial of this case which requires the reversal of the conviction of Maxwell and directs that he be accorded a new trial, it is fitting and proper that the conviction of Snyder be set aside also and a new trial accorded to him. State v. Riley, supra, 49 N.J. Super. 570, 584 (App. Div. 1958). Accordingly if he elects to accept the benefit of this court's judgment in that regard he may, within 30 days after the date of the issuance of the mandate pursuant to this opinion, apply to the trial court for a new trial. This opinion will constitute authority and direction to the trial court to grant Snyder a new trial if such application be made.
Reversed.