387 P.2d 467

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**J. C. BLACKSTEN, Defendant-Appellant.**

**No. 9302.**

Supreme Court of Idaho.

Dec. 13, 1963.

Hall & Rowett, Mountain Home, for appellant.

Allan G. Shepard, Atty. Gen., and Warren Felton, Asst. Atty. Gen., Boise, for respondent.

TAYLOR, Justice.

In the spring of 1961, defendant (appellant) leased a portion of his farm in Elmore county to the complaining witness, J. D. Caradine. The lease did not include pasture land. Upon the leased land Caradine raised hay, wheat and corn. Caradine was

approximately 43 years of age, and defendant was approximately 77 years of age. Some friction developed between them during the cropping season with reference to Caradine's farming, and money loaned by defendant to Caradine. Defendant contended that Caradine had abandoned the crops in July and for that reason the defendant harvested the third crop of hay, and in October had commenced picking the corn. October 6th, pursuant to defendant's request, a neighbor, one Pachner, came to the farm with a corn harvesting machine to complete the harvesting of the corn. Caradine, observing the machine crossing the pasture land, stopped Pachner near the cornfield, told Pachner that the corn belonged to him and that Pachner would get into a lawsuit if he undertook to harvest it for defendant. Defendant then came out of the cornfield, went to his pickup truck parked nearby, picked up a shovel and came up to the harvester and told Pachner to pay no attention to Caradine, addressed profane and abusive epithets to Caradine, ordered him off the property and told him if he did not leave he would "wrap the shovel around his head."

Pachner testified that Caradine dared defendant to carry out his threat and, upon again being addressed with an abusive epithet by defendant, Caradine stepped down from the platform on the harvester where he had been standing and approached defendant with his fists doubled up in a threatening manner; that thereupon defendant struck Caradine on the head with the shovel, inflicting a serious wound from which blood flowed freely; that the blow knocked Caradine down and dazed him; that other blows were struck when Caradine was down.

Caradine testified that he did not make an assault with his fists; that he stepped down from the harvester intending to leave the premises, when defendant struck him on the head with the shovel; that he was struck down three times; that he procured a stick from a nearby fence which he used to shield himself, and with which he struck the defendant.

Pachner further testified that after defendant first struck Caradine, he, Pachner, got down from the harvester and undertook to stop the affray; that when Caradine got the "club" from the fence he, Pachner, told the defendant to "get out of there" and headed for the pickup; that when he looked back "they were coming," defendant sideways, swinging the shovel, and Caradine after him with two sticks; that after entering the pickup he looked back again, saw Caradine on the ground, back of the pickup, again felled by defendant with the shovel; that defendant was by the cab; that he opened the door and as defendant got in and the door was closed behind him, a crashing blow struck the door from the outside and "we took off;" and that de-

fendant had sustained a broken arm and a cut on the side of his head.

The defendant testified that Caradine first came at him with clenched fists; that he told Caradine to stay back and when he kept coming, "I hit him in the head;" that Caradine grabbed the shovel; that he and Pachner pried Caradine's hands off the shovel and Pachner leaned it against the combine; that Caradine—"apparently he kinda come to and wandered off down the fence;" that he, defendant, picked up the shovel and followed a little distance behind; that Pachner went to the pickup and said, "come on, let's get out of here;" that when Caradine got to the gate he broke off a stay and rushed back and threw the stay at defendant; that the "stay" or stick struck him on the arm, breaking a bone; and "I did strike at him a time or two when he was getting out there on all fours, getting away from me."

Caradine was taken to a hospital where his head wound was sutured and dressed by a doctor.

By information of the prosecuting attorney, defendant was charged with aggravated assault and aggravated battery, under the provisions of I.C. § 18–912. By the terms of this statute, aggravated assault and aggravated battery are defined as follows:

"An assault or battery committed under any of the following circumstances is aggravated: when without justifiable or excusable cause a person unlawfully commits an asault (assault) upon the person of another, either with or without a weapon, and thereby wounds or inflicts grievous bodily injury upon such person; when committed with a premeditated design and by the use of means calculated to inflict great bodily injury.

"Every person guilty of an aggravated assault or battery as above defined shall be punishable by a fine of not less than $100.00 or by imprisonment in the county jail for not less than three months nor more than one year, or by imprisonment in the state penitentiary for a period not exceeding three years, or by fine not exceeding $1,000.00."

Defendant demurred to the information on the ground that it charged both aggravated assault and aggravated battery. At the opening of the trial the court ruled that the information was duplicitous and required the state to elect upon which charge it would proceed. The state elected the charge of aggravated battery.

The court properly instructed the jury upon simple assault and simple battery in the terms of the statutes defining those offenses (I.C. §§ 18–901 and 18–903), and that such offenses were necessarily included in the charge of aggravated battery, and

that the jury might find defendant guilty of any offense included in the charge, which in the judgment of the jury was supported by the evidence.

Defendant was found guilty of aggravated battery and judgment was entered imposing a fine of $350.00. Defendant prosecutes this appeal from the judgment and from an order denying his motion for a new trial.

■ By his first assignment defendant urges that the statute, I.C. § 18–912, is void for uncertainty. In particular it is urged that the word "grievous," "means nothing more than causing grief, pain or sorrow," and that an injury causing pain or sorrow would follow from the use of "force or violence upon the person of another," within the definition of simple battery, and that the use of the qualifying phrase "without justifiable or excusable cause" and "with a premeditated design and by the use of means calculated to inflict great bodily injury," render the statute ambiguous and indefinite. However, the word, "grievous" is not properly so mildly defined. In Webster's Third New International Dictionary it is defined as "causing, characterized by, or indicative of severe physical pain or suffering: hurtful, distressing, injurious (a wound) * * * Intense, severe (—pain)," also, "serious, deplorable, * * * atrocious, henious." The use of the word, "grievous" indicates a legislative intent to

describe an injury more serious than would result from a simple battery, and the court properly so instructed the jury. State v. Laughlin, 105 Mont. 490, 73 P.2d 718; State v. Davis, 72 Wash. 261, 130 P. 95; 18A Words and Phrases pp. 450, 452, 467. We do not find the statute uncertain for the reasons urged. State v. Aims, 80 Idaho 146, 326 P.2d 998; City of Lewiston v. Mathewson, 78 Idaho 347, 303 P.2d 680; State v. Evans, 73 Idaho 50, 245 P.2d 788; State v. Campbell, 70 Idaho 408, 219 P.2d 956; State v. Mead, 61 Idaho 449, 102 P.2d 915; People v. Green, 368 Ill. 242, 13 N.E. 2d 278, 115 A.L.R. 348; United States v. National Dairy Products Corp. (Feb. 18, 1963) 372 U.S. 29, 9 L.Ed.2d 561, 83 S.Ct. 594; Cf. State v. Pigge, 79 Idaho 529, 322 P.2d 703; Const. Art. 1, § 13.

■ By his second assignment, defendant urges that the verdict and judgment are contrary to the evidence. The evidence was conflicting. The credibility of the witnesses, the weight to be given to their testimony, as well as the facts, were for determination by the jury. I.C. § 9–201; State v. Johnson, 77 Idaho 1, 287 P.2d 425, 51 A.L.R.2d 1386, certiorari denied 76 S.Ct. 649, 350 U.S. 1007, 100 L.Ed. 869; State v. Davis, 69 Idaho 270, 206 P.2d 271; State v. Cacavas, 55 Idaho 538, 44 P.2d 1110. There was substantial and competent evidence to support the verdict; hence, it will not be disturbed. State v. Anderson, 82 Idaho 293, 352 P.2d 972.

■ Defendant also contends that the court erred in failing to instruct the jury as to the law of self-defense as against a trespasser. In support of this contention, defendant urges that the affray, having occurred on pasture land not covered by Caradine's lease, Caradine was a trespasser and that defendant was authorized to use such force as was necessary to remove him from the premises upon his refusal to leave pursuant to demand. We do not agree with this contention. Being a tenant, Caradine was entitled to be upon the premises for all purposes properly connected with his farming operations, and the evidence would support a finding that the route of access to the cornfield, at least with equipment, was across the pasture. The fact that defendant claimed, and Caradine denied, that the latter had abandoned his lease, would not affect the issue, particularly in view of the law that abandonment is a question of intent. Carrington v. Crandall, 65 Idaho 525, 147 P.2d 1009. The court instructed the jury fully on the law of self-defense. We find no error in this regard.

■ Defendant also urges error in the failure of the court to instruct on the disparity in the ages and physical condition of the parties to the affray, and that such disparity might justify the weaker in using a weapon to defend himself though the other party be unarmed. Where a considerable disparity is revealed by the evidence, or the appearance of the parties in court, the court, in its discretion, may give such an instruction. People v. Blake, 129 Cal.App. 196, 18 P.2d 399. However, in this case we do not find the omission of such instruction to be reversible error. The record shows the two men were of comparable size. The court correctly instructed as to the law governing the force and means which a person assaulted may use to resist such assault and to prevent an injury which appears imminent. The jurors had both parties before them and were qualified to determine whether the defendant, being the older, was the weaker of the two, and was justified in using the force and means which he did use. Bogudski v. Backes, 83 Conn. 208, 76 A. 540. In addition, defendant made no request for such instruction. State v. Patterson, 60 Idaho 67, 88 P.2d 493.

Lastly, defendant urges error in instruction no. 11. The portions of that instruction pertinent to this assignment are:

"The defendant is charged with aggravated battery. I heretofore instructed you on the definition of battery. Such battery becomes aggravated when committed without justifiable or excusable cause, and as a result of the battery the person battered suffers: grievous bodily injury, or when the battery is committed with premeditated design and by the use of means calcu-

lated to inflict great bodily injury, even if no serious injury results. * * *

"In summary, you are instructed that before you can find the defendant guilty of aggravated battery you must find beyond a reasonable doubt that the defendant committed a battery upon J. D. Caradine, and that in committing the battery the defendant, without justifiable or excusable cause, intended to and did inflict much more serious injury upon J. D. Caradine than is produced in ordinary battery, or that the defendant by premeditated design deliberately intended to inflict great bodily injury upon J. D. Caradine by use of means calculated to do so."

Texas and Arizona have statutory provisions similar to the definitions of aggravated assault and aggravated battery contained in our I.C. § 18–912, supra. Our statute was enacted in 1955. The Texas statute has been in effect for many years. Hodges v. State (1914) 73 Tex.Cr. R. 378, 166 S.W. 512. The pertinent provisions of the Texas statute are as follows:

"An assault or battery becomes aggravated when committed under any of the following circumstances:

"1. * * *

"2. * * *

"3. * * *

"4. * * *

"5. * * *

"6. * * *

"7. When a serious bodily injury is inflicted upon the person assaulted.

"8. * * *

"9. When committed with premeditated design, and by the use of means calculated to inflict bodily injury." Texas Statutes 1948, Vol. 2, § 1147.

The comparable provisions of the Arizona statute are:

"A. An assault or battery is aggravated when committed under any of the following circumstances:

"1. * * *

"2. * * *

"3. * * *

"4. * * *

"5. When a serious bodily injury is inflicted upon the person assaulted.

"6. When committed with a premeditated design and by the use of means calculated to inflict great bodily injury." 5 Arizona Rev.Stat., Crim. Code, § 13–245.

In the Illinois criminal code the crimes of aggravated assault and aggravated battery are defined in two separate sections, I.R.S., Crim.Code, c. 38, §§ 12–2, 12–4.

Subdivisions 9 of the Texas statute and 6 of the Arizona statute have been regarded

as defining aggravated assault, as distinguished from aggravated battery. In State v. Romero, 61 Ariz. 249, 148 P.2d 357, where the defendant was charged with the crime of aggravated assault, the court held that the statute did not compel the state to show that an injury was inflicted.

In Hodges v. State, supra, the Texas court said:

"Appellant was prosecuted for committing an aggravated assault under subdivision 9 of article 601, Pen.Code 1895 [now subdivision 8 of art. 1147, V.A.P.C.]; the indictment charging that the assault was committed with 'premeditated design and by the use of means calculated to inflict serious bodily injury.' It is thus seen that, to constitute this offense under this provision of the Code, two things must combine: First, the assault must be committed upon 'premeditated design'; that is, from a fixed purpose formed in the mind, and not upon a rash, inconsiderate impulse. It is true, the length of time is immaterial if the evidence shows a formed and fixed purpose and design. And, second, the assault under such circumstances must be committed by means calculated to inflict serious bodily injury. The real injury inflicted is not so material, except in so far as it may tend to show that the means used were calculated and perhaps did inflict serious bodily injury." 166 S.W. 2d at 512, 513.

In a later case, in which the charge was aggravated assault, the Texas court said:

"In a prosecution for aggravated assault under Section 8 of Art. 1147, V.A.P.C., the State is not required to establish that serious bodily injuries were inflicted. Branch's Ann.P.C., Sec. 1592, p. 937. The injuries actually inflicted are material, however, principally on the issue of whether or not the means used were calculated to and perhaps did inflict serious bodily injuries. * * * it was necessary that the State prove (1) that the assault was made upon the person named; (2) by the means alleged; (3) with premeditated design, that is with fixed purpose formed in the mind, and not upon a rash, unconsidered impulse, and (4) the means alleged and used was calculated to inflict great bodily injury." Ohlrich v. State (Tex.Crim.App.) 287 S.W.2d 478, at 479.

The California court has held that actual injury is not necessary in the prosecution of a charge of assault "by any means or force likely to produce great bodily injury," under a statute (Penal Code, § 245) the same as our I.C. § 18-906. People v. McCaffrey, 118 Cal.App.2d 611, 258 P.2d 557; People v. Yancy, 171 Cal.App.2d 371, 340 P.2d 328.

We conclude that the provision of I.C. § 18–912, following the semicolon, to-wit:

"when committed with a premeditated design and by the use of means calculated to inflict great bodily injury."

defines the crime of aggravated assault; and that such assault may be established without proof of actual battery; also, a conviction of such charge is proper in cases where a battery does occur, whether or not the battery be sufficient to support a conviction of aggravated battery.

In this case the information charged an aggravated battery and further alleged that it "was committed by said defendant, as aforesaid, with a premeditated design and by means calculated and likely to inflict great bodily injury." Thus, the information was sufficient to charge an aggravated assault as well as aggravated battery.[1] The assault having been alleged as the manner and means of the commission of the aggravated battery, it was an included offense and the information, therefore, was not duplicitous. I.C. §§ 19–2312, 19–1413 (repealed 1963 S.L., c. 159), 19–1703; State v. Anderson, 82 Idaho 293, 352 P.2d 972; State v. Wall, 73 Idaho 142, 248 P.2d 222; State v. Petty, 73 Idaho 136, 248 P.2d 218.

The error committed by the court in requiring the state to elect between the charges of aggravated assault and aggravated battery was in keeping with defendant's demurrer, and defendant does not complain of that ruling on this appeal. The jury was instructed that the charge was aggravated battery, including simple battery and simple assault. The court's instruction no. 11 is to be understood and applied as the jury was required to understand and apply it, that is, as a statement of the requisites of an aggravated battery, and the references therein to "premeditated design" and the "use of means calculated to inflict great bodily injury" were to be regarded by the jury either as additional or alternative elements characterizing the battery, of whatever degree the latter might

---

1. "That the Defendant, J. C. Blacksten, on the 6th day of October, 1961, at King Hill, in the County of Elmore, State of Idaho, then and there being, did then and there knowingly, unlawfully, intentionally and feloniously, and without justifiable or excusable cause, commit an assault and battery upon the person of J. D. Caradine, by then and there striking the said J. D. Caradine with a shovel held in his, the said Defendant's hands, thereby wounding the said J. D. Caradine in particular by a deep larceration in and around the head of the said J. D. Caradine, and larcerations upon the arm of the said J. D. Caradine, and thereby inflicting a grievous bodily injury upon the said J. D. Caradine; in particular a severe laceration of the skull, causing profuse bleeding, and further, that said assault and battery was committed by said Defendant as aforesaid with a premeditated design and by means calculated and likely to inflict great bodily injury."

**412**

be. So read, the instruction was not prejudicial to the defendant; rather, it was favorable to him.

Judgment affirmed.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.