430 P.2d 886

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Clarence Edward McKEEHAN, Defendant-Appellant.**

**No. 9767.**

Supreme Court of Idaho.

July 18, 1967.

Rehearing Denied Sept. 7, 1967.

Rapaich & Knutson, Lewiston, for defendant-appellant.

Allan G. Shepard, Atty. Gen. and John S. Simko, Asst. Atty. Gen., Boise, for plaintiff-respondent.

SPEAR, Justice.

Appellant Clarence Edward McKeehan has taken this appeal following conviction in the district court for Nez Perce County of the offense of aggravated battery. McKeehan was sentenced to a maximum indeterminate term of two years in the Idaho State Penitentiary.

The offense of which he was convicted is defined in I. C. § 18–912, as follows:

"An assault or battery committed under any of the following circumstances is aggravated: when without justifiable or excusable cause a person unlawfully commits an asault (assault) upon the person of another, either with or without a weapon, and thereby wounds or inflicts grievous bodily injury upon such person; when committed with a premediated design and by the use of means calculated to inflict great bodily injury.

"Every person guilty of an aggravated assault or battery as above defined shall be punishable by a fine of not less than $100.00 or by imprisonment in the county jail for not less than three months nor more than one year, or by imprisonment in the state penitentiary for a period not exceeding three years, or by fine not exceeding $1,000.00."

The circumstances surrounding the perpetration of the alleged aggravated battery are as follows:

On June 7, 1965, appellant and his wife, Betty Jean, resided at 327 First Avenue, Lewiston, Idaho. Mrs. McKeehan had filed a complaint for divorce, but the parties had reconciled. On June 7th, while appellant was in Orofino, Idaho, searching for work, the complaining witness, Edward E. Paffile, and the appellant's wife spent the day together drinking. Sometime late that evening or in the early morning hours of the next day Paffile, who was inebriated to the point of being sick, returned to the McKeehan apartment with Mrs. McKeehan and lay down across the bed in the McKeehan's bedroom.

What then occurred resulting in the arrest and subsequent conviction of appellant can best be gleaned from the testimony, somewhat conflicting, adduced at the trial from the principal parties and witnesses.

Paffile testified that after he lay down he heard a knock at the door and that Mrs. McKeehan said, "It's Sonny," (appellant's nickname) and that he, Paffile, began to crawl out the bedroom window; that he jumped to the ground and started running, believing himself to have successfully eluded a confrontation with the appellant. Thereafter, he was unable to recall anything that happened—his last recollection was that of running from beneath the bedroom window.

Appellant testified that upon returning home he knocked on the front door of his home, and, hearing voices inside and not being able to get into his home, he ran around to the bedroom window; that a figure jumped out on top of him and that he and this figure tumbled down a flight of concrete cellar stairs that were located under window. There, at the bottom of the stairs, the parties started fighting. This continued up to the top of the stairs and halfway or three-quarters around the house. Appellant described it as a "real knock-down-drag-out fight," both men exchanging blows in the darkness outside the house. Once at the top of the concrete stairs, and again later, on the lawn in back of the house, appellant fell or was knocked down and hit his head. After having fallen down the second time he could remember nothing else until the police arrived. Not until then was he able to recognize the man with whom he had struggled, and who he believed had attacked him, as the complaining witness, Edward Paffile, a former neighbor and social acquaintance.

Betty McKeehan testified that when she heard her husband return home, she turned off the house lights and ushered Paffile to the bedroom window. Paffile told her that he was not afraid of her husband, and she finally had to push Paffile out the bedroom window. She did not witness the confron-

tation. She testified she remained in the house some ten or fifteen minutes, and that during this time she did not look out the window or in any manner observe anything. When she did go outside, it was only moments before the police arrived.

State's witness, Bonnie Paffile (Edward Paffile was her ex-husband), who lived next door to the McKeehans, had been awakened by the disturbance and had called the police to the scene. She testified that she saw appellant from her bedroom window kicking and beating a motionless figure (whom she did not recognize as her former husband until the police arrived), who was lying face up on the ground outside, and heard appellant cussing and saying, " 'I'm going to kill you. You were out with my wife,' like that, and 'I'm going to kill you for it.' " She estimated appellant kicked or struck the complaining witness anywhere from 10 or 15 times to 20 or 35 times before she called the police. The complaining witness was helpless, and she believed him unconscious. After having phoned the police she returned to the bedroom window and observed the appellant leave the complaining witness and turn toward his wife, Betty McKeehan, who was also outside in the backyard. Her vision was obscured, but she heard appellant angrily shouting at his wife, and believed Betty had been knocked down by the appellant, for she testified she heard Betty say, " 'Please don't kick me in the head * * *.' " Mrs. McKeehan got up and ran into her apartment. Appellant chased her but she got in and locked the door before he could get in. Appellant said, "Let me in or I'll kill you," but when he couldn't get in appellant went back outside to where the complaining witness was lying and continued his assault. At this time she thought "the guy was dead." She testified "the guy couldn't move and he [appellant] continued kicking him some more and that is when he picked him up by the shoulders and kicking him back down." She further testified that appellant now would alternately pound the complaining witness with his fists and feet,

then pick up the complaining witness by the shoulders and knock him back down with drop kicks. She estimated appellant must have struck some thirty to fifty blows in the course of this second battery.

Officer Norman Ayers of the Lewiston Police Department, who subsequently arrived at the scene, testified he saw the appellant swing a "hay maker" at a figure hanging like a "rag doll." He testified that he shined his flashlight on this figure who was then on the ground and discovered it was Paffile, who was semi-conscious and whose face was badly battered. McKeehan, on the other hand, was not bleeding, did not have any apparent bruises or abrasions, talked intelligibly, and did not appear dazed.

Appellant denied that he chased Paffile, but insists an unknown figure, later recognized as Paffile, jumped out on top of him from the bedroom window of his own home, knocking him to the ground. While admitting exchanging blows with this unknown assailant, appellant stated he was unable to recall kicking and beating the complaining witness as he lay helpless on the ground, and believed he did not, in fact, do so. Moreover, appellant was unable to recall chasing or arguing with his wife and then returning to administer a further beating to the complaining witness, and stated he would not have so acted.

Mrs. McKeehan, additionally, denied that appellant had struck her or chased her as was reported by Bonnie Paffile. However, Sergeant Fannon of the Lewiston Police Department, also called to the scene that night, testified in rebuttal for the State, he observed that Mrs. McKeehan's hair was disarranged, that along the outside of her left leg there were dirt marks and scraping marks and that her clothes were generally disarrayed.

Dr. Galen Rogers, a physician and surgeon, who treated Paffile at the hospital the evening of the fight, testified he found Paffile semi-conscious, and described his condition as critical because of the rather severe head injuries. He testified that

Paffile had considerable bruising with marked swelling about the face, a cut over the left eyebrow, a cut extending from the left side of his mouth and a hemorrhage in the anterior chamber of the right eye. Later examination in fact revealed no injury to the bony structure of the head, no damage to the frontal sinuses which are very susceptible to being fractured or hurt, and the teeth were not injured. Under cross-examination, Dr. Rogers testified that any time there are lacerations of the head and swelling in that area there is a possibility that serious injury exists, and that the patient must always be watched carefully.

Paffile was hospitalized for over a week, primarily to keep a check on his injured eye, described both by Dr. Rogers and Dr. Eugene Baldeck, an eye specialist called in to treat Paffile, as a very serious injury. Dr. Baldeck explained that the danger with a contusion such as suffered by Paffile was one not only of the initial hemorrhage, but the possibility of additional bleeding, which if it does occur results in a condition dangerous not only to vision but to the eye itself. Absolute bed rest was prescribed. Additionally, double eye patches were placed over each eye for a week to prevent any movement of the injured eye by the patient. Dr. Baldeck testified an injury such as Paffile sustained to his eye would have have been caused by a blunt injury to the eye, such as could result from a fist or the toe of a shoe.

Upon this evidence the jury returned a verdict of guilty to the crime of aggravated battery, I.C. § 18–912, and the trial court sentenced appellant to a maximum indeterminate term of two years in the penitentiary.

Appellant has asserted eleven assignments of error in support of his contention that the judgment of the trial court should be reversed and the cause dismissed, or that a new trial should be awarded. For purposes of review, the assignments will be considered under nine separate headings. Considered in the order alleged, the respective assignments are:

(1) The amended information was *not* legally sufficient and the demurrer to it should have been sustained.

Appellant in this regard principally alleges the information was defective in that it failed to describe the exact nature of the injuries allegedly inflicted. This assertedly was particularly necessary since one of the elements distinguishing a simple from an aggravated battery is the nature of the injuries inflicted. Additionally, appellant maintains, the information was demurrable for the reason it failed to specify the exact time and place of commission of the alleged crime.

The amended information which appellant contends was demurrable charged that the appellant on or about the 8th day of June, 1965, in the County of Nez Perce, committed the crime of aggravated battery, I.C. § 18–912, a felony, in that the appellant,

" * * * wilfully, intentionally, and feloniously and without justifiable or excuseable cause and with the premeditated design then and there had, by a use and means calculated to inflict great bodily injury, did batter one Edward E. Paffile by striking and beating him about the face, head and body with his hands and fists and by repeatedly kicking the said Edward E. Paffile while he was unconscious or dazed and unable to defend or protect himself, thereby wounding and inflicting *grievous bodily injury* upon the said Edward E. Paffile * * *." (emphasis supplied)

Our statute, and several recent cases, require that a criminal information properly inform an accused of the exact nature of the charge against him, so that (1) the accused has the means to prepare a proper defense, and (2) he can protect himself against subsequent prosecution based on the commission of the same acts. See State v. Grady, 89 Idaho 204, 404 P.2d 347, and cases therein cited. The pertinent statutory provisions are found in I.C. §§ 19–1409 to 19–1411, 19–1418 to 19–1420 inclu-

sive, made applicable to criminal informations by virtue of I.C. § 19–1303. State v. McMahan, 57 Idaho 240, 65 P.2d 156.

Therefrom it appears that the criminal information must contain "[a] statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended" and must be direct and certain as it regards "[t]he particular circumstances of the offense charged, when they are necessary to constitute a complete offense." I.C. §§ 19–1409, 19–1411.

This court in State v. Blacksten, 86 Idaho 401, 387 P.2d 467, ruled that I.C. § 18–912 defining the offense of aggravated battery as embracing the wounding or inflicting of *"grievous bodily injury"* upon a person was not constitutionally void for uncertainty in the use of the quoted phrase, *but that the phrase indicated a legislative intent to describe an injury more serious than would result from a simple battery*, and held that the trial court properly so instructed the jury.

Similarly, in Com. v. Farace, 26 Pa.Dist. & Co.R.2d 265 (Pa.Quar.Sess.1961), that court held that the phrase *"grievous bodily injury,"* defining an assault and battery of an aggravated nature, conveyed a sufficiently definite warning as to the proscribed conduct when measured by common intelligence, understanding and practice to meet constitutional requirements, and that, therefore, the statute in question was not void for uncertainty.

Recently, in State v. Perry, 5 Ariz.App. 315, 426 P.2d 415 (1967), it was held that the words *"serious bodily injury,"* within the statute defining assault as aggravated when serious bodily injury is inflicted, are words of ordinary significance, and it was not required that the trial court define the term in the instructions given the jury, since this phrase is well understood by any jury.

The appellant was not prejudiced because the information on which he was tried failed to describe the exact nature of the injuries inflicted, and stated only that the injuries sustained were grievous in the terms of the statute. The statutory phrase, *"grievous bodily injury,"* according to its natural import, fully, directly, and explicitly, without any uncertainty or ambiguity, sets down a statement of an act necessary to constitute the commission of an aggravated battery such as to enable a person of common understanding to know what is intended, i.e., that the injuries inflicted are in nature more serious than that which would result from a simple battery.

The appellant was properly informed of the exact nature of the charge against him within the general criteria governing the sufficiency of an information and was afforded thereby the means by which to prepare a proper defense. While our statute and constitutional restrictions require that a criminal information set forth every element necessary to constitute the offense with which an accused is charged, and the particular circumstances of the offense charged, when they are necessary to constitute a complete offense, it is neither necessary nor proper to allege evidence or disclose in the information the proof which the prosecution relies upon to establish the charge. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); Stapleton v. United States, 260 F.2d 415, 17 Alaska 713 (9 Cir. 1958); Williamson v. United States, 310 F.2d 192 (9 Cir. 1962); 4 Wharton's Criminal Law and Procedure, §§ 1764, 1796, pp. 561, 621–22 (1957).

The information, it is true, filed in State v. Blacksten, supra, more particularly describes the injuries inflicted. However, compare State v. Perry, supra; McKinley v. State, 152 Tex.Cr.R. 167, 211 S.W.2d 745 (1948); Koontz v. State, 92 Tex.Cr.R. 17, 241 S.W. 160 (1922); Bagley v. State, 67 Tex.Cr.R. 574, 150 S.W. 773 (1912).

Similarly, the information adequately sets forth the time and place of the commission of the alleged offense sufficiently to comply with statutory and consti-

tutional requirements. I.C. §§ 19–1410, 19–1414, 19–1418. State v. Larsen, 76 Idaho 528, 286 P.2d 646; State v. Scott, 72 Idaho 202, 239 P.2d 258; State v. Mundell, 66 Idaho 297, 158 P.2d 818. ·

Appellant's first assignment is without merit.

(2) Appellant was denied his constitutional and statutory right to a preliminary hearing.

The record of the proceedings in the justice court affirmatively establishes that appellant was afforded an opportunity for a preliminary examination on the complaint filed with that court, and one in fact was set; however, on the date of the hearing appellant and his counsel appeared and waived the preliminary hearing. The caption of the complaint charged appellant with aggravated assault; however, the language of the charging part of the complaint clearly indicated an aggravated battery. This language is as follows:

"* * * wilfully, intentinally [sic], and feloniously and without justifiable or excuseable cause and with the premeditated design then and there had, by a use and means calculated to inflict great bodily injury, did assault one Edward E. Paffile by striking and beating him with his hands and fists and by kicking the said Edward E. Paffile while he was unable to defend or protect himself, thereby wounding and inflicting grievous bodily injury upon the said Edward E. Paffile * * *."

It was to this complaint that appellant, represented by counsel, waived preliminary hearing. Thereafter appellant was bound over to the district court and called to answer the charge brought in the information filed by the prosecuting attorney in that court. This initial information followed, in substance, the complaint originally filed with the justice court. Thus while the caption of the initial information charged appellant with aggravated assault, the language used in the charging part of the information indicated an aggravated battery. Before the jury was called, the

State was given leave to amend the information, and the amended information on which appellant was tried specifically charged appellant in the caption of the information with the offense of aggravated battery. Otherwise, the amended information was the same, in substance, to the original information and the initial complaint.

Appellant made a timely motion for a preliminary hearing on the amended information, but this motion was denied. Appellant contends the refusal of the trial court to grant a preliminary hearing on the amended information constituted a denial of his constitutional and statutory right to a preliminary hearing because the amended information charged an offense, i.e., aggravated battery, different than that charged in the complaint and initial information to which he had originally waived a preliminary hearing, i.e., aggravated assault.

The State, on the other hand, contends that after appellant waived preliminary hearing on the charge of aggravated assault and was bound over to the district court on that charge, the district court acquired jurisdiction thereof, and did not lose jurisdiction by any amendment to the information since no prejudice resulted to appellant by amending the information as it is apparent the same offense, in effect, was charged in the charging portion of both the original complaint and the amended information.

The Idaho Constitution, Article 1, Section 8, provides that "[n]o person shall be held to answer for any felony or criminal offense of any grade, unless on presentment or indictment of a grand jury or on information of the public prosecutor, after a commitment by a magistrate * * *." The enacting statute, I.C. § 19–1308, provides that "[n]o information shall be filed against any person for any offense until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace, or other examining magistrate or officer, unless such

person shall waive his right to such examination * * *."

State v. McGreevey, 17 Idaho 453, 105 P. 1047, is apparently the first Idaho decision to examine fully the nature of the right afforded an accused to a preliminary hearing. Therein the appellant McGreevey was charged in the complaint filed with the justice of the peace with the crime of murder. Appellant was arrested and taken before a magistrate, and his preliminary hearing was duly and regularly held in conformity with the requirement of law. After all the evidence had been submitted, the examining magistrate made an order holding the appellant to answer in the district court on the charge of manslaughter, a lesser included offense. However, thereafter, an information charging appellant with murder was filed by the county prosecutor in the district court, and appellant was held to answer for that charge. Thereupon, appellant filed a motion to quash the information on the ground that he had never been committed by a magistrate for the crime of murder. The district court overruled the motion, and this ruling was assigned as error on the subsequent appeal.

The court concluded that appellant had been denied his constitutional right to a preliminary hearing and the case was remanded for retrial. The holding of the court with regard thereto is effectively summarized in the following excerpt from that opinion:

"* * * we conclude that the general and prevailing opinion is to the effect that where the statute or Constitution says that 'no information shall be filed against any person until such person shall have had a preliminary examination,' or until 'after a commitment by a magistrate,' such provision has the effect of prohibiting the filing of an information

for any other offense than that for which the accused was held by the committing magistrate. Such is clearly and unmistakably the meaning and intent of our constitutional provision." State v. McGreevey, supra, at p. 463, 105 P. at p. 1050.

The holding in the McGreevey case, though not cited, is later supported in State v. Hendricks, 80 Idaho 344, 330 P.2d 334. See also, State v. Thompson, 392 S.W.2d 617 (Mo.1965) ; State v. Colvin, 81 Ariz. 388, 307 P.2d 98 (1957) ; State v. Pay, 45 Utah 411, 146 P. 300 (1915).

■ An accused is denied, therefore, his constitutional right to a preliminary hearing where an information is filed or subsequently amended charging him with a crime of a greater degree or of a different nature than that for which he was held by the committing magistrate.

It is, additionally, in this state, specifically provided by statute that a different and distinct offense may not be charged by way of amended information. I.C. § 19-1420.[1] See, State v. Thompson, supra.

■ However, we conclude that the amendment permitted in the present case did not have the effect of charging a greater or different offense such that the appellant was denied his constitutional and statutory right to a preliminary hearing within the holdings of the cases above cited. Nor do we find the amendment to the information prohibited by statute.

■ The facts set forth in the complaint and initial information clearly evidenced that appellant was being held for aggravated battery, and it is not an unreasonable supposition that appellant fully realized such was in fact the case when, represented by counsel, preliminary hearing on the complaint was waived. The purpose of

1. § 19-1420 provides as follows:
 "An indictment or information may be amended by the prosecuting attorney without leave of the court, at any time before the defendant pleads, and at any time thereafter, in the discretion of the court, where it can be done without prejudice to the substantial rights of the defendant. An information or indictment can not be amended so as to charge an offense other than that for which the defendant has been held to answer."

the amendment to the information was merely to correct the caption of the information to properly designate the offense unmistakably charged in the charging part of the information. Such an amendment is proper under our statutes, i. e., I.C. § 19-1419, which specifically provides that "[n]o indictment [information] is insufficient, nor can the trial, judgment, or other proceeding thereon, be affected, by reason of any defect or imperfection in matter of form, which does not tend to the prejudice of a substantial right of the defendant upon its merits."

The case of State v. Mickey, 27 Idaho 626, 150 P. 39, involved a situation where the information charged the defendant with the crime of manslaughter, though it was evident from the facts recited therein that the defendant was being charged with the crime of involuntary manslaughter for the unlawful and felonious operation of a motor vehicle resulting in the death of a human being. However, the defendant interposed a motion to quash the information on the ground that he had never been held by order of any magistrate for his appearance in district court on the charge of manslaughter, except the crime of involuntary manslaughter. The motion was sustained by the trial court.

The state appealed and the supreme court held that the district court erroneously had sustained the motion to quash the information. The court stated in its opinion that:

"Where it clearly appears from the facts set forth in the information that the defendant is charged with the crime of involuntary manslaughter, and the acts or elements which constitute the offense of involuntary manslaughter are sufficiently charged to enable a person of common understanding to know what is intended, the information is sufficient, even though it fails to allege that the defendant is charged with the crime of involuntary manslaughter, and makes the general charge of manslaughter. *The facts alleged, rather than the designation of the offense, control.*" (emphasis supplied)

State v. Mickey, supra, at p. 631, 150 P. at p. 40.

The uniformly applicable rule, and the one specifically adopted in this state, is that no formal or detailed charge or description of the offense is necessary in the complaint before the magistrate. Under the rule all that is required is a general description or designation of the offense so that the defendant may be given a fair opportunity to know, by a proffered preliminary examination, the general character and outline of the offense for which he is to have an examination. State v. McGreevey, supra. The complaint filed in the justice court met that test, and the appellant was put on notice by the facts set out there in that he was being held for the offense of aggravated battery, although in fact the caption of the complaint charged aggravated assault. Such a conclusion finds further support in light of the fact that the crimes of aggravated assault and aggravated battery are defined together in one statutory provision, I.C. § 18-912, under the title "aggravated assault and battery," for which one punishment is provided.

The original complaint filed with the justice court thus charged both aggravated assault and aggravated battery, and, consequently, the amendment of which appellant complains did not have the effect of prejudicing any substantial right of the appellant since the amendment was one of form only and not substance.

(3) The court should have granted appellant's motion for a change of venue because of the existence of prejudice and bias against him in Nez Perce County such as to deprive him of a fair trial; or failing this, a mistrial should have been declared when it became obvious during the trial that the name "Sonny" McKeehan was well known in Nez Perce County and that its bearer could not, because of his unfavorable reputation, receive a fair trial in that county.

Mr. McKeehan had a record of several prior arrests and was well known to the police in Lewiston. The complaint, and before amendment the initial information, re-

**819**

ferred to appellant as alias "Sonny" Mc-Keehan. Appellant submitted affidavits in his behalf before trial to the effect that his reputation in Nez Perce County was such that he could not receive a fair trial there; the State filed counter-affidavits.

The grounds for removal of a criminal case are set forth in I.C. § 19–1801. This court in interpreting this statutory provision has held that the refusal to grant a motion for removal rests largely in the discretion of the trial court; that refusal is not a ground for reversal of a conviction, where it appears that the defendant had a fair trial, and that no difficulty was experienced in securing the jury. Our cases have further concluded that it is not sufficient in support of a motion for change of venue to show that great prejudice exists against the accused; rather it must appear that the prejudice against him is so great as to prevent him from having a fair and impartial trial. Stokes v. State, 90 Idaho 339, 411 P.2d 392; State v. McClurg, 50 Idaho 762, 300 P. 898; State v. Breyer, 40 Idaho 324, 232 P. 560; State v. McLennan, 40 Idaho 286, 231 P. 718; State v. Hoagland, 39 Idaho 405, 228 P. 314; State v. Gilbert, 8 Idaho 346, 69 P. 62. See especially, State v. Rooke, 10 Idaho 388, at 403–404, 79 P. 82, at 87.

The affidavits submitted on behalf of both the State and the appellant (see State v. Rooke, supra) have been carefully read together with the exhibits submitted by appellant and appellant's argument in support of his motion for change of venue, and we conclude the trial court did not abuse its discretion in denying appellant's motion.

Appellant urges that the prospective jurors and witnesses called him by his nickname several times and that this prevented him from obtaining a fair and impartial trial. From the record it appears only one juror knew the appellant by his nickname, and that juror was ultimately excused. No other juror knew appellant by that name, and while the nickname was mentioned during the trial, on *voir dire* examination of the jury, it was established that the jury did not know of any stigma attaching to that name. Thus, this assignment of error is without merit.

(4) The court unduly restricted appellant's *voir dire* examination, the cross-examination of State's witnesses and the direct examination of appellant's witnesses.

Appellant specifically alleges that during the *voir dire* examination of juror Mrs. McCann, counsel for appellant was frustrated in the attempt to learn whether Mrs. McCann had any biases or moral compunctions about physical violence that would cause her to be unduly prejudicial against a person accused of aggravated battery. He claims the court's refusal to allow counsel to pursue this line of questioning was error.

The rule in this jurisdiction is that great latitude is allowed in the examination of veniremen upon their *voir dire* for the purposes of determining whether there is sufficient ground to challenge the veniremen for statutory cause, I.C. §§ 19–2017 to 19–2022, or whether it is expedient to challenge them peremptorily, I.C. §§ 19–2015 and 19–2016. The scope of *voir dire*, examination of veniremen in a criminal case, however, is a matter resting in the discretion of the trial court, the exercise of which will not be reversed except in case of abuse. State v. Miller, 60 Idaho 79, 88 P.2d 526;[2] State v. Hoagland, 39 Idaho 405,

2. There appears an error in the Idaho report of this decision at 60 Idaho p. 82, headnotes 3 and 4. The first sentence of this paragraph, as appears from the original opinion on file with the clerk of the court should read: We do think, however, it was error for the trial court to sustain the objections to the questions propounded to the jurymen with ref-

erence to their "prejudice against a man who may take a drink of intoxicating liquor" and with reference to any religious prejudices they might entertain. The Idaho report erroneously reads, "We do *not* think * * *." The opinion is correctly reported in the Pacific Reporter, 88 P.2d at 527.

228 P. 314. See especially, Frame v. Grisewood, 81 Nev. 114, 399 P.2d 450 (1965).

 The trial court did not abuse that discretion. In the first instance counsel's question in respect of this matter was improperly framed in that it tended to incorporate evidence which would later be introduced at trial. Moreover, it appears from the record that the trial judge advised that he would allow counsel to ask whether the fact that the defendant was charged with aggravated battery, would raise in the minds of the veniremen any prejudice one way or the other. Appellant's contention that the *voir dire* examination of jurors was unduly restricted is not sustained by the record, and no basis for a reversal appears therefrom.

We have also examined the trial record thoroughly, and especially the cross-examination of State's witness Bonnie Paffile, and conclude therefrom that appellant's contention that the direct examination of appellant's own witnesses and cross-examination of certain of the State's witnesses was unduly restricted is not justified. The record on the contrary shows that the trial was conducted in an exemplary manner.

(5) The court improperly instructed the jury in failing to (a) properly define the elements of the crime of aggravated battery, (b) properly instruct the jury on the law of self defense and (c) give more than a partial and fragmental set of instructions on the theory of appellant's defense.

 This assignment is also without merit. The instructions given by the trial court fully and accurately defined the crime of aggravated battery and completely apprised the jury on the theory of appellant's defense. While requested but refused instructions may state the law, it is not error to refuse to give such instructions where the subject matter has been adequately covered by other instructions given by the trial court. State v. Puckett, 88 Idaho 546, 401 P.2d 784; State v. Nesbitt, 79 Idaho 1, 310

P.2d 787; State v. Hewitt, 73 Idaho 452, 254 P.2d 677.

 In this case the information charged an aggravated battery and further alleged it was committed by appellant, "with the premeditated design then and there had, by a use and means calculated to inflict great bodily injury." Thus, the information was sufficient to charge an aggravated assault as well, and as aggravated assault was alleged as the manner and means by which the aggravated battery was committed, the trial court properly instructed the jury on the lesser included offense. State v. Blacksten, supra.

 Appellant assigns error in the court's refusal to instruct that a "fist or foot covered with an ordinary shoe is not a deadly weapon within the law of aggravated assault." The court's refusal to give this instruction was not error. I.C. § 18–912 makes no reference to a deadly or dangerous weapon but specifically provides that the assault or battery is aggravated, *with or without a weapon*, when wounds or grievous bodily injury are inflicted upon the person assaulted *or* when such assault is committed with a premeditated design and by the use of means calculated to inflict great bodily injury. Thus when the battery results in grievous bodily injury it is immaterial whether or not *any* weapon, deadly or otherwise, is used. In the alternative portion of the statute, the battery is "aggravated" when committed with a premeditated design and by use of any "means" (it does not state "weapon") *calculated to inflict* great bodily injury. Thus this does not require the actual *infliction* of great or grievous bodily injury as does the first provision. The evidence adduced at the trial, which has hereinbefore been delineated, is more than sufficient to sutain the conviction of appellant under either or both alternatives of the statute. See People v. Horton, 213 Cal.App.2d 185, 28 Cal.Rptr. 666 (1963); State v. Bonner, 241 Or. 404, 406 P.2d 160 (1965); State v. Blacksten, supra.

Additionally, appellant assigns error in the court's refusal to instruct that "a husband may attack another man for unlawful intimacy with his wife in the husband's presence when he has a well-founded belief that said criminal acts of intimacy are just over or are about to begin." This requested instruction is not an accurate statement of the law. The justifiable or excusable cause referred to in the statute (I.C. § 18–912) means the act complained of is justifiable or excusable if done in self defense or by mistake. The circumstance to which the requested instruction refers would perhaps bear on the mental state of the appellant at the time of the assault and battery. This was fully covered in the instructions given the jury. There was no error in the court's refusal of appellant's requested instruction. Cf. State v. Young, 52 Or. 227, 96 P. 1067, 18 L.R.A.,N.S., 688 (1908). See generally 6 Am.Jur.2d, Assault and Battery, § 62, p. 57.

(6) The State's attorney made improper arguments to the jury at the close of the trial in that he improperly expressed opinions about the guilt of the appellant.

Examination of the State's closing argument to the jury reveals no basis for the reversal of this conviction. This court, of course, recognizes that it is the duty of the prosecuting attorney to see that an accused has a fair trial, and that improper argument may require a reversal of a conviction. State v. Spencer, 74 Idaho 173, 258 P.2d 1147. Cf. State v. Johnson, 77 Idaho 1, 287 P.2d 425, 51 A.L.R.2d 1386. See generally, Bell, Handbook of Evidence for the Idaho Lawyer, pp. 5–7 (1957). Here, the prosecuting attorney expressly based his opinion upon the evidence, and we find no error in such expression. State v. Dong Sing, 35 Idaho 616, 208 P. 860.

(7) The court failed to heed its statutory duty to admonish the jury at adjournment and recess in some instances. I.C. § 19–2127.

We have determined that no error prejudicial to appellant was committed thereby. The rule applicable to this situation is well stated in 53 Am.Jur., Trial, § 890, p. 641:

"With respect to civil and criminal cases, statutes in somewhat varying terms require courts to admonish jurors upon separation, or upon adjournments, whether permitted to separate or kept in charge of an officer, as to their duty not to communicate with any person on any subject connected with the trial. While courts should strictly comply with this requirement * * * error in this respect may not be of sufficient importance in a given case to demand a reversal, particularly where the jury had already been admonished * * *."

From the record it appears the trial judge on numerous occasions admonished the jury in respect of this matter, with always the added proviso that such admonishment would apply through the entire trial of the case. Moreover, the record makes clear that in those instances (almost all of which involved short recesses of five to ten minutes) in which the admonishment was not given, counsel for appellant failed to make any objection in regard thereto, and thereby waived any right to complain of such failure for the first time on appeal. See 89 C.J.S. Trial § 454, p. 78. Appellant makes no substantial offer of prejudice, and this assignment is without merit.

(8) The jury's verdict was not supported by the evidence because the State failed to establish and prove certain material elements of the crime of aggravated battery.

Most particularly it is urged by appellant that the State failed to prove that the complaining witness, Paffile, suffered grievous bodily injury as is required for a conviction of aggravated battery under I.C. § 18–912.

Bagley v. State, 67 Tex.Cr.R. 574, 150 S.W. 773 (1912), approved an instruction whereby the jury was informed that by the term "serious bodily injury" is meant *"such an injury as gives rise to apprehension—an injury which is attended with danger."* (emphasis supplied) More recently,

in Jackson v. State, 168 Tex.Cr.R. 51, 323 S.W.2d 442 (1959), the same court stated at p. 443: "The rule is well settled that to constitute serious bodily injury the injury must be grave, not trivial—such an injury as gives rise to apprehension of danger to life, health or limb. *It is not, however, required that the injuries be such as may result in death."* (emphasis supplied)

The term "grievous bodily injury" was by this court in State v. Blacksten, supra, said to describe an injury more serious than would result from a simple battery.

The injuries inflicted upon the complaining witness were clearly more serious than would result from a simple battery, and were attended with danger and gave rise to apprehension of danger to life, health or limb such that the statutory requisite of grievous bodily injury necessary to convict for aggravated battery was clearly present.

■■■ The medical testimony was without contradiction to the effect that Paffile was badly beaten about the head and face and was semi-conscious when admitted to the hospital, all of which gave rise to the apprehension that he had sustained severe head injuries, and that Paffile additionally sustained a serious eye injury which endangered vision in that eye. The fortunate circumstance that such more serious injuries did not develop can in no way be interpreted, as appellant contends, that Paffile in fact sustained only trivial injuries which would not support a conviction for aggravated battery.

See also, State v. Perry, supra; Hatfield v. State, 377 S.W.2d 647 (Tex. 1964); State v. Maxwell, 50 N.J.Super. 298, 142 A.2d 108 (1958).

The basic story of witness Bonnie Paffile that appellant administered a terrible beating to the complaining witness was not inherently improbable, and is substantiated at numerous points in the testimony adduced at trial. It was entirely within the province of the jury to believe her testimony that the appellant returned to administer a further beating to the complaining witness, who was entirely helpless at that point, and conclude therefrom that such action by the appellant at this point was a calculated and vicious attack upon the complaining witness which found no justification in the circumstance that appellant may first have acted in self defense. See generally, 1 Wharton's Criminal Law and Procedure, §§ 349, 350, pp. 698–703 (1957).

■■■ The credibility of witnesses and the weight to be given their conflicting testimony as well as other facts appearing from the trial of the case were exclusively for the determination of the jury; and where there is substantial and competent, though conflicting, evidence to support the verdict, such verdict will not be disturbed on appeal. State v. Blacksten, supra. The evidence supports appellant's conviction of aggravated battery.

(9) The court erred in denying appellant's motions in arrest of judgment and for a new trial.

These motions were based on the same grounds as the assignments of error already discussed and having been found to be without merit there is no showing of any abuse of discretion on the part of the trial judge in denying such motions.

We have carefully reviewed each of appellant's assignments. Finding no reversible error, the judgment of conviction is affirmed.

SMITH, McQUADE and McFADDEN, JJ., and DONALDSON, D. J., concur.