678 P.2d 102

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Sammy CAMARILLO, Defendant-Appellant.**

**No. 14183.**

Court of Appeals of Idaho.

March 13, 1984.

David Lee Posey, Payette, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Steve Berenter, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

During an altercation involving several individuals, the appellant, Sammy Camarillo, fatally shot Oscar De La Pena. Camarillo was charged with first degree murder and with the use of a firearm in the commission of a murder. At trial he was found guilty by a jury of second degree murder and also of the firearm charge.

Camarillo appeals, contending the district court improperly restricted his voir dire examination of individual prospective jurors during the jury selection process in his trial. He also urges that the district court abused its discretion by sentencing him to an indeterminate period of twenty years, enhanced by an additional ten years because of the firearm charge. We affirm the judgment of conviction and the sentences.

I

During the selection of the jury, the district court conducted the initial voir dire to determine basic qualifications of the prospective jurors. Both counsel for the state and for Camarillo were then allowed to examine the entire panel as a group. After doing so, they both passed the jurors for cause. Counsel were then allowed to conduct their voir dire of individual potential jurors, in preparation for the exercise of peremptory challenges.

In the course of individual examination by Camarillo's counsel, the court ruled that certain areas of inquiry were improper and should be discontinued. Camarillo contends that these rulings unduly restricted his preparation for peremptory challenges. Particularly, Camarillo argues he was restricted from asking any questions concerning (a) self-defense; (b) the jurors' understanding of reasonable doubt; and (c) any areas already covered by the court's voir dire examination. We will examine each of these assertions in turn.

A. *Self-defense.*

Early in the examination of the potential jurors, Camarillo's attorney asked one of the prospects:

If we showed you that at the time of the shooting Mr. Camarillo was in a state of fear and trying to protect his own life or protect himself from bodily injury ... [w]ould you, if the Court so instructs, find my client not guilty?

After the prospective juror had answered in the affirmative, the trial judge stated:

The Court is going to instruct on that if it becomes an issue in the case, but we cannot presume what the evidence is going to show, and I don't want that implanted or argued to the jury by way of voir dire examination....

Thereafter, the attorney continued to ask questions of other potential jurors regarding self-defense but all of those questions were couched as: "If the Court were to instruct you that self-defense is a complete defense to the charge of first degree murder, would you follow that instruction?" No further ruling was made by the court in response to the latter type of questioning.

■■■ It has been long established in Idaho that wide latitude is allowed counsel in the examination of potential jurors on voir dire to afford counsel information which might enable the attorney to more intelligently exercise challenges, either for cause or peremptorily. *See State v. Hoagland,* 39 Idaho 405, 228 P. 314 (1924). It is also well settled that placing limits beyond which the voir dire examination may not properly go is a matter which rests in the sound discretion of the trial court. *State v. Pettit,* 33 Idaho 326, 193 P. 1015 (1920). *See also* I.C.R. 24. The exercise of such discretion will not be disturbed except for a manifest abuse of discretion. *State v. Hoagland, supra.*

■■ It is clear from this record that Camarillo's counsel was not precluded altogether from exploring the area of self-defense with the prospective jurors. The court's ruling—in response to counsel's question framed in a hypothetical fashion—indicated that counsel should not "presume what the evidence is going to show." Our Supreme Court has upheld the discretionary disallowance of questions which call for a juror's answers to what he would do under a certain hypothetical state of the evidence, *State v. Hoagland, supra,* or which are "improperly framed in that [the question] tended to incorporate evidence which would later be introduced at trial." *State v. McKeehan,* 91 Idaho 808, 820, 430 P.2d 886, 898 (1967). We note also other authorities hold that hypothetical questions

which have correct reference to the law of the case, and which do not call for a pre-judgment of the case or of any supposed case on the facts, may be propounded in the sound discretion of the trial court. *See cases cited,* 50 C.J.S. *Juries* § 275 at 1042 n. 15 (1947).

■ Here the question propounded by Camarillo's counsel did not correctly reflect the law of self-defense in Idaho. It was couched in the subjective terms of Camarillo being in a state of fear. The Idaho rule of self-defense is not premised upon a subjective test. It is grounded in the objective concept of the actions of a "reasonable person." *State v. Baker,* 103 Idaho 43, 644 P.2d 365 (Ct.App.1982). The question asked by counsel dangerously could have mislead the jury by misstating the law. We hold that the trial court did not abuse its discretion by indicating that such questions as counsel had just asked should be discontinued.

### B. Reasonable doubt.

■ Camarillo's complaint about the limitation on inquiries concerning reasonable doubt came about as follows. Addressing one of the prospective jurors, Camarillo's counsel inquired: "Do you think you understand what is meant by 'beyond a reasonable doubt'?" At that point, the trial judge stated:

> The Court has not instructed on that term yet, so it is improper for them to respond. I have instructed you that the burden of proof is beyond a reasonable doubt. I will define that for you when I instruct you, and possibly before we even commence the trial. However, again, you will follow the instructions [sic] as I give it to you concerning reasonable doubt as I give it to you, and I will define reasonable doubt for you.

Thereafter Camarillo's attorney was not prevented from referring to "reasonable doubt" in his questions. Without further ruling from the court, he was able to obtain assurances from prospective jurors that they understood Camarillo was presumed innocent until the state satisfied its burden of proving guilt beyond a reasonable doubt.

We believe a better procedure could have been employed by counsel to confirm whether the prospective jurors understood what was meant by "beyond reasonable doubt." Counsel could have requested the court to give an instruction to the jury, defining reasonable doubt. Once such an instruction was given, it would be appropriate to inquire whether the jurors understood that concept and were willing to apply it to the case before them. *See generally,* 50 C.J.S. *Juries* § 275 at 1043 (1947). However, the court was not obligated to give the defining instruction, sua sponte, without a request therefor from counsel. *See State v. Bitz,* 93 Idaho 239, 460 P.2d 374 (1969) (McQuade, J., concurring specially). We are not convinced that, under these circumstances, Camarillo was unduly restricted by the court in pursuing his line of inquiry concerning reasonable doubt. We hold no reversible error occurred.

### C. Questions concerning areas already covered.

■ We turn next to the third asserted restriction, concerning questions duplicative of areas already covered by the court's voir dire. Camarillo argues that this restriction was imposed by the court through comments made after ruling on the self-defense line of inquiry discussed above. The court stated:

> I will ask counsel to refrain from asking or discussing issues of law which have been covered by the Court. The Court has previously instructed the jurors, and it is my understanding, ladies and gentlemen of the jury, you all assured me that you will follow the law as I give it to you, and that will include the law on self-defense if that becomes applicable, as well as any standard type of instruction in this case. You will follow the law as I give it to you; is that correct? If anyone disagrees with that statement I just made, so indicate.

Subsequently, during a recess to the judge's chambers, defense counsel formally

objected to not being allowed to ask questions already answered in the voir dire of the entire panel. The court answered:

> So far as I'm aware at this point, the only area you have been prohibited from asking questions is in the area of law, which is a function of the Court, and the Court will instruct the jury in that area. It is not a proper area for voir dire examination, insofar as questions asked by the Court to the panel as a whole, I am positive in my judgment from the experience I have had over the years, that I did get a response from the jury, even though it may not have been vocal, because of preliminary remarks I made to the jury. There was no objection to the procedure while the Court was doing it, and the purpose of voir dire examination is to obtain a fair and unbiased jury, not a favorable jury. To repeat questions already asked by the Court is unwarranted exercise of voir dire examination. It is time-consuming, and whether we have all day or not, the jurors may not. It is the function of the Court to sit and supervise voir dire examination, and I will continue to encourage counsel to speed the process along. *You can ask any question which has not been asked by the Court or anything that was unclear about the question that was asked by the Court may be clarified, but in my judgment you have in no way been limited in your jury examination at this point.* [Emphasis supplied.]

The court did not impose a blanket prohibition against inquiry into subjects covered in the group voir dire. The judge's comments clearly left counsel free to inquire into areas which needed clarification and did not prevent counsel from exploring other areas relating to possible peremptory challenges. Counsel on appeal has not pointed to any voir dire inquiry in the record which was disallowed solely because it was duplicative of group questioning. We hold that Camarillo has not shown upon this record that he was unduly restricted in his voir dire examination.

II

■ Camarillo asks that we determine whether it was proper to impose the sentence for the firearm charge consecutive to the murder sentence. In his argument, counsel for Camarillo conceded that the "consecutive" nature of a firearm sentence had been approved as an "enhancement" sentence by our Supreme Court, in a case decided after Camarillo's sentencing. *See State v. Cardona,* 102 Idaho 668, 637 P.2d 1164 (1981). The court, in *Cardona,* upheld the constitutionality of I.C. § 19–2520, the statute which mandates a "consecutive" sentence for the use of a firearm in the commission of certain enumerated crimes. *See also State v. Smith,* 103 Idaho 135, 645 P.2d 369 (1982) and *State v. Galaviz,* 104 Idaho 328, 658 P.2d 999 (Ct.App. 1983). Camarillo therefore simply asks that we reconsider the constitutionality issue addressed in *Cardona.* We decline to do so.

■ Camarillo also asks that we determine whether the aggregate length of his sentences was an abuse of discretion. Camarillo argues that the trial court "reacted" out of passion rather than using reason in determining the length of the sentences. He contends the court was influenced by a recent assassination attempt on the life of President Reagan which had occurred between the time Camarillo's verdict was rendered and his sentencing. He also contends the trial court viewed the use of a handgun in the commission of a crime as a threat to the judge's own personal right to possess a handgun. We have carefully examined the record of the sentencing proceeding and find no reference to, or support for, these assertions.

■ Camarillo could have been sentenced to a maximum term of life imprisonment for second degree murder. I.C. § 18–4004. Also, any term of imprisonment imposed for the murder could have been enhanced by an additional fifteen years as a result of the firearm charge. I.C. § 19–2520. The sentences Camarillo received, totaling thirty years, were within the statutory maximum that could have

been imposed. A sentence within the statutory maximum will not be disturbed unless a clear abuse of discretion is shown. A sentence may represent such an abuse if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). The concept of reasonableness, as applied to sentence review, is explained in *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App. 1982):

> [A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for those purposes is unreasonable. Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

Applying the enhancement approach announced by our Supreme Court in *Cardona,* Camarillo received, in effect, an indeterminate sentence of thirty years. He will be eligible for parole consideration after serving ten years in confinement. I.C. § 20-223. We focus therefore on whether, at the time of sentencing, such a period of confinement was reasonable under the *Toohill* criteria, considering the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

The circumstances of the shooting are sufficiently stated in the following version, given by Camarillo to a presentence investigator, and included in his presentence report:

> Mr. Camarillo states that he and his brother, Isreal, were in the Weiser park, when Alberto Fuentes, Jr. started calling them names. Alberto wanted to fight, so they started fighting. Mr. Fuentes had a lot of friends standing around watching the fight. One of his friends had a tire iron and was threatening to throw it at Sammy. Sammy told him three times to drop it, and the man never did. Mr. Camarillo thought the man was going to throw the tire iron, so he shot the gun. He didn't know he had hit anybody, but left immediately with Isreal. When asked how he felt he could have fired into a crowd of people and not hit anyone, he later admitted he felt he probably hit the man with the tire iron, but didn't see anyone fall, so felt he missed everyone. When asked why he carried a gun, Mr. Camarillo said he has carried a gun for about three years because of previously being shot in the leg by someone else. He later found out from an older brother in California that he was wanted for murder, and turned himself in to the Bakersfield [California] Police Department.

Camarillo's prior record includes convictions for assault, disturbing the peace and obstructing or resisting an officer, and driving while intoxicated. His record shows charges outstanding for felony possession of a controlled substance, and four charges of failing to appear in court. One of the "failure to appear" offenses is charged as a felony; the others appear to be misdemeanors.

The district judge meticulously reviewed the circumstances of the crime and the background of the defendant. He considered the interests of society, the seriousness of the crime, the possibility of rehabilitation and the likelihood of repetition of the crime in the future. He noted the value of punishment as a deterrent. The court acknowledged Camarillo's remorse over the incident, and declined the prosecutor's request to impose a life sentence for the murder.

In our view, the judge gave sound reasons for his sentencing decision. The facts of this case reasonably can be viewed to indicate that confinement for at least ten

**316**

years would not exceed the period necessary to protect society from Camarillo's conduct or to punish him for a senseless and unjustified homicide. *State v. Jenkins*, 105 Idaho 166, 667 P.2d 269 (Ct.App. 1983). We conclude the district court did not abuse its sentencing discretion.

The judgment of conviction and sentences are affirmed.

SWANSTROM and BURNETT, JJ., concur.