# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket Nos. 46820/46821/46850/46851

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: July 29, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| RAND ALLEN MELIUS, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia Meyer, District Judge.

Judgment of conviction and unified sentence of ten years with five years determinate for being in physical control of a motor vehicle while under the influence, affirmed; orders denying Idaho Criminal Rule 35 motions for reduction of sentences, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Rand Allen Melius appeals from his judgment of conviction and his unified sentence of ten years with five years determinate in Docket No. 45851 for being in physical control of a motor vehicle while under the influence of alcohol, Idaho Code § 18-8004. Melius also appeals the district court's denials of his motions under Idaho Criminal Rule 35 for a reduction of his sentences in Docket Nos. 46820, 46821, 46850, and 46851. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This consolidated appeal arises from Melius's four different convictions and sentences for violating I.C. § 18-8004. In 2014, the State charged Melius with, among other things,

operating a vehicle while under the influence (DUI) in Docket No. 46820 (2014 case). A jury found Melius guilty of DUI, and Melius later pled guilty to having two prior DUI convictions in the preceding ten years. As a result, the district court imposed a unified sentence of five years with two years determinate but suspended the sentence and placed Melius on supervised probation for three years.

In 2016, the State charged Melius with DUI and driving without privileges, I.C. § 18-8001, to which charges Melius pled guilty in Docket No. 46821 (2016 case). The district court imposed a unified sentence of eight years with four years determinate, to run concurrently with the sentence imposed in the 2014 case. The court, however, retained jurisdiction. After the period of retained jurisdiction, the court placed Melius on supervised probation for three years.

In 2017, the State again charged Melius with DUI, and Melius pled guilty in Docket No. 46850 (2017 case). The district court sentenced Melius to ten years with five years determinate, to run concurrently with the sentences in the 2014 and 2016 cases; placed Melius on supervised probation for five years; and ordered him to enroll in and successfully complete an alcohol abuse treatment program.

Then again in April 2018, while Melius was on supervised probation for the DUI convictions in his 2014, 2016 and 2017 cases, the State charged him with being in the physical control of a motor vehicle while under the influence in violation of I.C. § 18-8004 in Docket No. 46851 (2018 case). The facts underlying this charge include that a police officer observed a pickup truck idling in a bar parking lot in Coeur d'Alene; the vehicle was running but the headlights were off; and Melius was in the driver's seat, "slumped over" as if sleeping. The officer knocked on the window several times before Melius responded. While speaking with Melius, the officer smelled alcohol coming from Melius's person and observed his speech was slurred and his eyes were bloodshot and glassy. Melius initially indicated he was "sleeping it off" but then denied drinking. A search of the vehicle revealed an empty beer can under the driver's seat and a bottle on the floor containing an amber liquid which smelled like beer. Melius failed a field sobriety test; refused to provide a breath sample; but consented to a blood draw, the results of which showed Melius's blood alcohol concentration was 0.245.

Melius proceeded to a jury trial in the 2018 case, and during voir dire, the prosecutor inquired about the prospective jurors' attitudes regarding Idaho's law which makes being in

actual physical control of a motor vehicle while intoxicated unlawful--even if the vehicle is not moving. Specifically, the prosecutor inquired:

> You heard the allegation here. It's that [Melius] was in physical control of a motor vehicle. In other words, the allegation here is that he was behind the driver's wheel, in the driver's seat, with the engine running. There's no allegation of driving.
> Does anybody have a problem that you can be charged under the DUI law with actual physical control if you're behind the driver's seat with the engine running, but the car is not moving?

Defense counsel objected to this questioning, and the district court overruled the objection. Thereafter, the prosecutor restated the question at the request of a prospective juror:

> The question was physical control. The law in Idaho is that if you're under the influence and you're behind the wheel of a car that's running, that's actual physical control of a motor vehicle under the influence. So I expect the Court will tell you that's against the law, and I'm trying to figure out if anybody has a problem with that.

Defense counsel did not object to this restatement of the question.

In response to the prosecutor's question, Juror 39 indicated he might not be able to set aside his personal beliefs and be fair. For example, Juror 39 stated "[the] law is a little bit too harsh" and that "[i]f [Melius's] excuse is fairly legitimate, I'd have a hard time." In response to Juror 39's comments, the prosecutor stated:

> You're going to be looking at the evidence, you hear the law, and you've got to make a decision. And I'm just trying to figure out whether you can follow the law or follow your personal beliefs instead.
> . . . .
> [T]he issue is, can you be fair in this case?

When Juror 39 responded, "I don't think so," the prosecutor moved to strike Juror 39 for cause. After further questioning of Juror 39, the prosecutor asked, "Can you set aside your personal conviction about physical control and being under the influence?"

> At this point, defense counsel objected again, stating:

> [The prosecutor] is asking the juror to essentially give his verdict right now, to rule on the case. He's told him what he thinks the facts will show, he's told him what he expects Your Honor to instruct the jury on, and now he's saying, what will you do with that information, will you follow the law, will you convict him?

The district court overruled this objection, stating that "we have allegations only, so far, and we're asking about opinions on a certain kind of law."

3

Thereafter, the prosecutor asked Juror 39, "If the judge tells you, 'This is the law,' can you do what the judge says?" Juror 39 responded, "I can be honest and say I don't know. I don't know." The prosecutor again moved to excuse Juror 39; defense counsel did not object; and the court excused Juror 39.

During the prosecutor's subsequent questioning, Juror 55 likewise indicated he might not be able to set aside his personal beliefs. He stated, "I struggle with the fact that the car was not moving, was not technically operating a motor vehicle." When questioned further, he indicated he might not be able to set aside his personal beliefs and be fair:

[Prosecutor]: . . . . [I]t's whether you can take your personal convictions [and] put them aside in a case? In some cases, some people can't do it.
[Juror 55]: I would say, without hearing all the details, I'm not sure if I could set that aside and make that decision just setting [sic] here right now to say I can totally get past that.
[Prosecutor]: The issue is that we've got to know going into it that a juror can be fair, that he can take--
[Juror 55]: I think if it has to be a yes or no, I can't say yes, so I would probably have to say no if it has to be one or the other.
[Prosecutor]: That you couldn't be fair?
[Juror 55]: Without knowing all the details, I could not specifically say I could put it all aside and follow the letter of the side [sic] in a vehicle that's not moving.
[Prosecutor]: So you could see a situation where after the evidence was presented, you wouldn't follow the law because of this personal conviction?
[Juror 55]: Possibly, yes.

Based on this exchange, the prosecutor moved to excuse Juror 55, and defense counsel objected:

[Defense]: Your Honor, we would object. Again, I believe the prosecutor's line of questioning is really asking this witness to say, how would you vote on this case, and when the witness says, I don't know, it depends on how the facts come out, all he's saying is he doesn't know how he would decide the case.
[Court]: . . . And for the third time, I disagree with how the prosecutor is asking the question.

After overruling Melius's objection, the district court excused Juror 55 for cause.[1]

After jury selection, Melius proceeded to trial and the jury found him guilty of being in the physical control of a motor vehicle while under the influence. Thereafter, Melius pled guilty

---

[1] The district court also excused Juror 10 for cause over Melius's objection after Juror 10 indicated she would not follow the law. On appeal, Melius neither challenges the prosecutor's questioning nor the court's dismissal of Juror 10.

4

to having two prior convictions under I.C. § 18-8004 within the past fifteen years and to a persistent violator enhancement.  At the sentencing hearing, Melius admitted to violating his probation in the 2014, 2016, and 2017 cases by being convicted of a DUI in the 2018 case and by drinking alcohol on three separate occasions.  As a result, the district court revoked Melius's probation in the 2014, 2016, and 2017 cases; executed the underlying sentences in those cases; and imposed a unified sentence of ten years with five years determinate in the 2018 case, to run concurrently with the sentences in the 2014, 2016, and 2017 cases.  Subsequently, Melius filed a Rule 35 motion for leniency in each of his four cases.  The court denied all four of those motions.

Melius timely appeals the judgment of conviction and the sentence in his 2018 case.  He also timely appeals each of the district court's orders denying his Rule 35 motions in each of his 2014, 2016, 2017, and 2018 cases.

## II.

## ANALYSIS

### A. Voir Dire Examination

Melius alleges the district court abused its discretion by allowing the State "to improperly frame its questions [during voir dire] to incorporate evidence that would later be introduced at trial" and "asked two prospective jurors to take a particular view of the factual situation presented here."  Melius does not articulate, however, what view or anticipated evidence the prosecutor asked the jurors to assume, but the two jurors to whom Melius's argument relates are Jurors 39 and 55.  Notably, Melius does not contend that the court erred by excusing these two jurors for cause; the prosecutor's voir dire examination violated his constitutional right to an impartial jury; or the prosecutor improperly inquired about the jurors' attitudes regarding the applicable law.  Accordingly, we address Melius's narrow challenge that the prosecutor "incorporate[d] evidence" into his questioning of Jurors 39 and 55 and asked them "to take a particular view" of the facts, notwithstanding Melius's failure to consistently object to the voir dire questioning he challenges on appeal.

"The determination whether a juror can render a fair and impartial verdict is directed to the sound discretion of the trial court and will not be reversed absent a showing of abuse of discretion." *State v. Hauser*, 143 Idaho 603, 609, 150 P.3d 296, 302 (Ct. App. 2006).  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-

5

tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

The goal of voir dire is to assure the retention of a fair and impartial jury. *State v. Hart*, 112 Idaho 759, 761, 735 P.2d 1070, 1072 (Ct. App. 1987). Idaho Criminal Rule 24(b) specifies that "the court must disallow any question asked by an attorney that is not directly relevant to the qualifications of the juror, or is not reasonably calculated to discover the possible existence of a ground for challenge, or has been previously answered." Attorneys, however, are given wide latitude in asking questions during voir dire to determine whether grounds to challenge a juror, either for cause or peremptorily, exist. *State v. McKeehan*, 91 Idaho 808, 819, 430 P.2d 886, 897 (1967). A juror make be stricken for cause from the jury panel if either actual bias or implied bias exists. I.C. § 19-2019(1), (2). Actual bias is defined as "the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which, in the exercise of a sound discretion on the part of the trier, leads to the inference that he will not act with entire impartiality." I.C. § 19-2019(2). "[W]hen a juror admits bias, and gives no unequivocal assurance of the ability to be impartial despite several efforts by the court or counsel to elicit such an assurance, an inference that he will not act with entire impartiality becomes inescapable." *Hauser*, 143 Idaho at 610, 150 P.3d at 303.

We disagree with Melius that the State improperly framed its questions "to incorporate evidence that would later be introduced at trial" or asked Jurors 39 and 55 to "take a particular view" of the facts. In context, the prosecutor's questions only restated the State's allegations against Melius of which the prospective jurors were already aware. Before voir dire began, the Clerk of the Court read to the prospective jurors the State's amended information alleging the charge against Melius:

> Melius . . . was in actual physical control of a motor vehicle on or at a street, highway, intersection, or other place open to the public while under the influence of alcohol, or, in the alternative, was in actual physical control of said motor vehicle at said location with an alcohol concentration of .08 or more, as shown by an analysis of his blood to wit: .245 . . . .

The question to which defense counsel objected specifically referenced this charge and its allegations:

> You heard the *allegation* here. It's that [Melius] was in physical control of a motor vehicle. In other words, the *allegation* here is that he was behind the driver's wheel, in the driver's seat, with the engine running. There is no *allegation* of driving.
>
> Does anybody have a problem that you can be *charged* under the DUI law with actual physical control if you're behind the driver's seat with the engine running, but the car is not moving?

(Emphasis added.) As the district court stated when overruling Melius's objection, the question related only to the allegations, not to evidence the State anticipated might be introduced at trial as Melius contends. Because the prosecutor's questions focused on the allegations, we reject Melius's contention that the State incorporated evidence into its questioning or asked the jurors to take a particular view of the facts inconsistent with the allegations.

Further, the case law on which Melius relies is inapposite, including *State v. Camarillo*, 106 Idaho 310, 678 P.2d 102 (Ct. App. 1984). In that case, a jury found Camarillo guilty of murder. *Id.* at 311, 678 P.2d at 103. On appeal, Camarillo argued the district court improperly restricted him from inquiring, among other things, about whether jurors would follow the court's instruction on self-defense. *Id.* at 312, 678 P.2d at 104. Specifically, Camarillo challenged the court's admonition during voir dire that "we cannot presume what the evidence is going to show" after Camarillo's attorney asked a prospective juror whether he could "find [Camarillo] not guilty" if the evidence showed "Camarillo was in a state of fear and trying to protect his own life or protect himself from bodily injury." *Id.*

This Court rejected Camarillo's argument, ruling that "the question propounded by Camarillo's counsel did not correctly reflect the law of self-defense in Idaho" because it was couched in subjective terms of Camarillo's state of mind versus an objective, reasonable person standard required for the application of self-defense under Idaho law. *Id.* at 313, 678 P.2d at 105. The Court further noted:

> Our Supreme Court has upheld the discretionary disallowance of questions which call for a juror's answers to what he would do under a certain hypothetical state of evidence or which are improperly framed in that the question tended to incorporate evidence which would later be introduced at trial.

*Id.* at 312, 678 P.2d at 104 (citations, quotations, and brackets omitted).

Unlike in *Camarillo*, the prosecutor in this case did not ask any juror to assume facts not yet proven. Likewise, none of the other cases on which Melius relies support his argument. *See Mattson v. Bryan*, 92 Idaho 587, 589, 448 P.2d 201, 203 (1968) (concluding trial could did not

commit reversible error by sustaining objection to voir dire examination about anticipated evidence of "a married man going out with a woman not his wife"); *McKeehan*, 91 Idaho at 820, 430 P.2d at 898 (ruling voir dire examination was not unduly restricted where counsel's question was "improperly framed in that it tended to incorporate evidence which would later be introduced at trial"); *State v. Hoagland*, 39 Idaho 405, 418, 228 P. 314, 318 (1924) ("The exclusion of questions, upon objection, which call for the venireman's answer as to what he would do under a certain hypothetical state of the evidence, and asking if he will be guided by the instructions, [does] not constitute error."). Accordingly, the district court did not abuse its discretion by refusing to disallow the prosecutor's questioning of Jurors 39 and 55.

Moreover, even if the district court abused its discretion by allowing the prosecutor's questions, the error was harmless. Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). The error is harmless if the Court finds that the result would be the same without the error. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017).

Melius does not assert the prosecutor's voir dire examination, which he challenges on appeal, tainted either the entire jury panel or any particular juror's impartiality. To the extent Melius's challenge is the district court improperly excluded Jurors 39 and 55, after refusing to disallow the prosecutor's voir dire examination of them, that exclusion was harmless. By disqualifying the jurors to resolve any doubt about their lack of impartiality, the court simply replaced them with other impartial jurors. *See Hauser*, 143 Idaho at 610, 150 P.3d at 303 (noting resolution of doubt on side of disqualification simply replaces one impartial juror with another impartial juror). Accordingly, Melius was not harmed by the disqualification of Jurors 39 and 55 because the result was the same without the alleged error--the jurors who convicted Melius were impartial, and Melius does not contend otherwise.

**B.      Sentence**

Melius asserts the district court abused its discretion when it imposed a unified sentence of ten years with five years determinate in the 2018 case. An appellate review of a sentence is based on the abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted

consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Herrera*, 164 Idaho at 270, 429 P.3d at 158.

If a sentence is not illegal, the appellant has the burden to show it is unreasonable and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Melius acknowledges his sentence is within the statutory limits but argues the district court abused its discretion by not considering certain mitigating factors. First, Melius asserts the court did not "adequately consider that, because the 2018 case involved [Melius] deciding to sleep in his truck after getting drunk, it was not a typical case of operating a motor vehicle under the influence." Contrary to Melius's assertion, however, the court expressly considered this fact, noting he has repeatedly been convicted of DUI because he was asleep or passed out in the driver's seat while the vehicle was running and concluding Melius knew such conduct was unlawful because he had "been doing the same thing for the last four years."

Second, Melius asserts the district court "did not give adequate consideration to [his] desire to try drug court as a more effective way to deal with his substance abuse problems." The court, however, expressly considered Melius's potential for rehabilitation, including in drug court, and concluded his history demonstrated an unwillingness to engage in treatment:

> [T]he felony DUI history indicates to me--or it gives rise to a concern there is an unwillingness on your part to really engage in treatment and an unwillingness to refrain from driving--you had a suspended license--an unwillingness to refrain from using alcohol, and most importantly, an unwillingness to refrain from drinking and driving or being in actual physical control of the vehicle.
> . . . .

9

We've tried many things with rehabilitation, probation, Good Samaritan, the rider program. . . . You do well for a while, and then you go back to your old habits.

. . . .

I am not confident that you will comply with Drug Court rules or probation rules. . . . [W]e've tried so many different things, and as an exercise of my discretion, it is my determination that the only reasonable consequence for your actions is imprisonment for public safety, for forced sobriety, which addresses rehabilitation, for deterrence of yourself and others, and as a sanction for this, which is your seventh lifetime DUI.

Based on this record, we cannot conclude the district court abused its discretion when sentencing Melius.

### C.    Rule 35 Motions

Finally, Melius asserts the district court abused its discretion in his 2014, 2016, 2017, and 2018 cases when it denied his Rule 35 motions for a reduction of his sentences. A motion for reduction of sentence under Rule 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987).

In support of his motions, Melius submitted a letter to the district court complaining about Idaho's DUI laws and criminal sentencings and foreshadowing his anticipated good behavior while in prison stating that "on a scale of one to fifty he had scored a zero on his initial risk and needs assessment" and that he was "being approved for off-compound work in the community." Further, during the hearing on the motions, Melius's counsel stated he "fully expected [Melius] to be a model prisoner." Melius asserts that his sentences are excessive in light of this new information.

Although good conduct while incarcerated is worthy of consideration, it may not necessarily result in a reduction of a prisoner's sentence. *State v. Gain*, 140 Idaho 170, 176, 90 P.3d 920, 926 (Ct. App. 2004). The evidence must be viewed in light of the entire record, with recognition that good conduct while incarcerated may not be an accurate indicator of the

10

individual's future conduct in a noncustodial setting. *Id.; see also State v. Gonzales*, 122 Idaho 17, 20, 830 P.2d 528, 531 (Ct. App. 1992) (affirming denial of Rule 35 motion despite defendant's good conduct while incarcerated).

Applying this standard, we cannot conclude the district court abused its discretion by denying Melius's Rule 35 motions. The court considered the new information about Melius's anticipated model behavior as a prisoner and was not persuaded it accurately indicated his future conduct when released from incarceration:

> My concern with you is not that you will not be a model prisoner. It's that when you're out in the community, you continue to do the same thing; you flout the law, you thumb your nose at what the law is and put yourself into this position. And there is a danger. You're not using good judgment when you do what you do, and somewhere along the line, you do drive, you have driven, you may drive in the future.

### III.

### CONCLUSION

The district court did not abuse its discretion by denying Melius's Rule 35 motions for reduction of his sentences; by sentencing Melius to ten years with five years determinate in the 2018 case; or during the State's voir dire examination in the 2018 case as it related to Jurors 39 and 55. Accordingly, we affirm Melius's judgment of conviction and sentence for the 2018 case and the court's orders denying Melius's Rule 35 motions in his 2014, 2016, 2017, and 2018 cases.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.